(July 5, 1913.)

# E. R. HOBBS, Appellant, v. TWIN FALLS CANAL CO., Respondent, and TWIN FALLS LAND & WATER CO., Appellant.

### [133 Pac. 899.]

POWERS OF CORPORATION—ARTICLES OF INCORPORATION—POWER TO MORTGAGE—AUTHORITY OF DIRECTORS.

    1.  Where H. enters into a contract with a corporation and purchases certain property, and by the terms of the contract it is stipulated and agreed that the corporation shall subsequently organize another corporation and that H. shall thereupon surrender his contract and take a certain amount of stock in the new corporation in lieu of his property and contract rights, and it is stipulated and agreed that the new corporation shall have no power or authority to execute notes and mortgages on the property of the corporation, and the new corporation is subsequently formed, and instead of the articles of incorporation providing that such corporation shall have no power or authority to execute notes and mortgages, they contain the reverse and provide that the corporation shall have the power and authority to execute notes and mortgages, and H. thereafter surrenders his original contract and accepts in lieu thereof the stock of the newly formed corporation, *held*, that he cannot subsequently maintain an action against the new corporation to enjoin the corporation from exercising the powers enumerated in its charter and executing notes and mortgages in accordance therewith.

    2.  *Held*, that the Twin Falls Canal Co., organized under the laws of this state and to which the original construction company, the Twin Falls Land & Water Co., transferred all the water rights, canals, dams, reservoirs, easements, and franchises originally acquired and constructed, became the owner in fee of the entire irrigation system, and that the land owners who purchased water rights were merely stockholders in the corporation, and that the only voice they have in the management or control of the irrigation works and system is such voice as their stock entitles them to have in the corporation, as such, and that the directors of the corporation have the power and authority under the articles of incorporation and the statute of the state to execute mortgages upon the property of the corporation to secure loans.

    3.  *Held*, further, that a mortgage executed by the Twin Falls Canal Co., in conformity with its articles of incorporation and the

state statute upon all the property of the corporation, would cover the entire canal system and water appropriations, easements, and franchises, and that in the event of a foreclosure of such mortgage and sale of the property, the purchaser would acquire such property, but that the water would still be appurtenant to the lands to which it had once been applied (sec. 4, art. 15, const.) upon payment by the land owner of reasonable rates established in conformity with law.

4. Any mortgage or other indebtedness of the Twin Falls Canal Co. must be defrayed by assessments upon the stockholders who are land owners and water users under the canal system, and it is the duty of the directors from time to time to levy assessments in accordance with law for defraying mortgage and other indebtedness as the same falls due.

5. *Held,* further, that the Twin Falls Canal Co. was organized under the general incorporation laws of this state, and that it was not organized under, and is not governed by, the provisions of chapter 14, title 4 of the Civil Code, which relates to and governs "religious, social and benevolent corporations."

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. Edward A. Walters, Judge.

Action to restrain and enjoin the issuance of bonds and mortgages. Judgment for defendant Twin Falls Canal Co. Plaintiff and defendant Twin Falls Land & Water Co. appeals. *Affirmed.*

Sweeley & Sweeley, for Appellant Twin Falls Land & Water Co., cite no authorities.

S. H. Hays, for Appellant Hobbs.

There is no provision in terms in the articles of incorporation of the Twin Falls Canal Company permitting the execution of a mortgage. If that right exists, it is one that is implied from the other powers. The Twin Falls Canal Company is not one organized for profit, but really for the purpose of performing a public duty. (*State ex rel. West v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039; Kinney on Irrigation, sec. 1481; Thompson on Corp., secs. 25, 26.)

Unless expressly authorized by its charter, such a corporation cannot convey or transfer property acquired or exercised by the power of eminent domain or which is necessary to enable it to properly perform its duties to the public. Such a conveyance violates its contract with the state and is contrary to public policy and void. (1 Clark & Marshall on Corporations, p. 440, sec. 162; Jones, Corp. Bonds and Mortgages, sec. 5; *South Pasadena v. Pasadena L. etc. Co.*, 152 Cal. 579, 93 Pac. 490; Cook on Corporations, sec. 780.)

The character of the ownership and its purpose make it impossible to give a mortgage upon the property. (McQuillin, Mun. Corp., secs. 1140–1144; *Branahan v. Mayor & Common Council of San Jose*, 24 Cal. 585.)

The permission to mortgage the property of an irrigation district would be destructive of the very purpose of the district in the same way that the mortgaging of the property here would be destructive to the entire purpose of the organization. (*Merchants' Bank v. Escondido Irr. Dist.*, 144 Cal. 329, 77 Pac. 937.)

The respondent here is a trustee for the settlers. It has nothing to mortgage except its trusteeship. This is the fundamental reason why the property cannot be mortgaged. The trustee of a naked trust cannot mortgage the trust property. (*Griffin v. Blanchar*, 17 Cal. 70; sec. 1615, Rev. Codes.)

There is no implied agreement that the majority may bind the minority as to material and fundamental changes in the powers and purposes of the corporation. (Thompson on Corporations, secs. 386–406, 409–411.)

The rule that a public service corporation has no right to mortgage its property is based upon the principle that it has no right to disable itself from performing its public duties. (Mechem on Corporations, sec. 71.)

The operating company on a Carey act project is a *quasi*-public service corporation. (*Hanes v. Idaho Irr. Co., Ltd.*, 21 Ida. 512, 122 Pac. 859.)

A. M. Bowen and J. W. Porter, for Respondent.

The Twin Falls Canal Co. is a private corporation, organized under the general laws of the state regarding private

corporations, engaged in the delivery of water to its stockholders. It is similar to many other corporations over the arid west, and is commonly known as a "mutual" water company. (Wiel on Water Rights, 3d ed., secs. 1266–1269; *Miners' Ditch Co. v. Zellerbach,* 37 Cal. 543, 99 Am. Dec. 300; *Hildreth v. Water Co.,* 139 Cal. 23, 72 Pac. 395.)

It is in no sense a public or a *quasi*-public corporation, nor is it a corporation engaged in public functions, such as a gas company or a water company furnishing gas or water to the public generally. It is purely a private corporation engaged in a private enterprise.

In the absence of express restrictions, a corporation undoubtedly has the power to raise money in order to carry on its business and to effect the purposes of its incorporation. It has this power without express statutory or charter authority. (Thompson on Corp., sec. 2166; 10 Cyc. 1101, 1102; *Bradbury v. Canal Club,* 153 Mass. 77, 26 N. E. 132, 10 L. R. A. 513; *North Hudson, B. & L. Assn. v. Bank,* 79 Wis. 31, 47 N. W. 300, 11 L. R. A. 845; *Grommes v. Sullivan,* 81 Fed. 45, 26 C. C. A. 320, 43 L. R. A. 419; *Sioux City Terminal etc. Co. v. Trust Co.,* 82 Fed. 124, 27 C. C. A. 73; *Thompson v. Lambert,* 44 Iowa, 239, 243.)

In the absence of charter or governing statute to the contrary, a corporation having power to borrow money may mortgage its real and personal property to secure the loan. (10 Cyc. 1182, and cases cited; *Eureka Iron Works v. Bresnahan,* 60 Mich. 332, 27 N. W. 524; *State v. Water Co.,* 61 Kan. 547, 60 Pac. 337; *City of Detroit v. Mutual Gas Co.,* 43 Mich. 594, 5 N. W. 1039; Thompson on Corporations, secs. 2527, 2167; *Copper Bell M. Co. v. Costello,* 11 Ariz. 334, 95 Pac. 94.)

The general statute of Idaho under which this corporation was framed (Rev. Codes, sec. 2769, as amended 1909, p. 157) gives this power.

A corporation may, for its ordinary indebtedness, or for money borrowed, where it has express or implied power to borrow money, issue its negotiable bonds as security, the

same as an individual may do. (Thompson on Corp., sec. 2235; 10 Cyc. 1167.)

Even if it should be held that the corporation performs a public or *quasi*-public function, its right to mortgage its assets, including its franchise (other, of course, than its franchise to be a corporation), cannot be assailed. (*State v. Topeka Water Co.*, 61 Kan. 547, 60 Pac. 377; *Farmers' Loan & T. Co. v. Waterworks*, 139 Fed. 661; *Memphis etc. R. Co. v. Berry*, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. ed. 831; *Morgan v. Louisiana*, 93 U. S. 217, 23 L. ed. 860; *Willamette Woolen Mfg. Co. v. Bank*, 119 U. S. 191, 7 Sup. Ct. 187, 30 L. ed. 384.)

There can be no valid objection because the mortgage in question covers all of the property of the corporation. The governing statute permits it. (10 Cyc. 1185; Thompson on Corp., secs. 1190, 2530; *Miners' Ditch Co. v. Zellerbach, supra; People v. College*, 38 Cal. 166; *Michigan Tel. Co. v. St. Joseph*, 121 Mich. 502, 80 N. W. 383; *Evans v. Heating Co.*, 157 Mass. 37, 31 N. E. 698.)

In the absence of statutory or charter provisions to the contrary, the authority to execute a mortgage is lodged exclusively in the board of directors. This is especially true where the entire management of the corporate affairs—as is the case here—is by statute or charter vested in the board. (Thompson on Corp., secs. 2560, 1190; *Gashwiler v. Willis*, 33 Cal. 11, 91 Am. Dec. 607; *Alta Silver M. Co. v. Placer Co.*, 78 Cal. 629, 21 Pac. 373; *Wohlford & C. B. & L. Assn.*, 140 Ind. 662, 40 N. E. 694, 29 L. R. A. 177; *Hunt v. Am. Grocery Co.*, 80 Fed. 70; Idaho Rev. Codes, sec. 2728.)

The stockholders of the Twin Falls Canal Company, by accepting their stock, have waived any variance between the construction contract and the real articles. In other words, they are estopped. (*Dempster M. Co. v. Downs*, 126 Iowa, 80, 106 Am. St. 340, 101 N. W. 735, 3 Ann. Cas. 187; *Marsh v. Mathias*, 19 Utah, 350, 56 Pac. 1074; Cook on Corp., sec. 522; *Jones v. Hale*, 32 Or. 465, 52 Pac. 311; *Callaghan v. Ditch Co.*, 37 Colo. 331, 86 Pac. 123; *Hause v. Mannheimer*,

67 Minn. 194, 69 N. W. 810; *Lincoln Park Chapter v. Swatek,*
204 Ill. 228, 68 N. E. 429.)

AILSHIE, C. J.—This is an appeal from a judgment of the
district court denying an injunction.

The Twin Falls Canal Co. is seeking to issue bonds against
the property of the company consisting of its irrigation sys-
tem, water appropriation and franchises, for the sum of
$300,000, and to execute a mortgage on the system to secure
the payment thereof. The appellant Hobbs is a stockholder
in the respondent company and a settler under this canal sys-
tem on land to which a water right is appurtenant and which
water right is represented by the stock appellant owns in
the corporation. The appellant, the Twin Falls Land &
Water Co., is the company which constructed the system in
the first place, and is known as the construction company.
For convenience we shall hereafter refer to the Twin Falls
Canal Co. as the canal company, and to the Twin Falls Land
& Water Co., as the construction company.

The appellant Hobbs applied to the district court for an
injunction to restrain the issuance of bonds and the execu-
tion of the mortgage as proposed by the corporation, and this
appeal is taken from the order and judgment denying the
relief sought.

On the 2d day of January, 1903, the construction company
entered into a contract with the state board of land commis-
sioners of the state of Idaho, whereby it agreed to build a
canal system and irrigation works in what now constitutes
Twin Falls and Lincoln counties. This work was to be done
under the terms of what is commonly known as the Carey
act. (Sec. 4, Act of Aug. 18, 1894; 28 Stats. at Large, 422.)
Under this contract with the state, the construction company
was to sell water rights in the canal system or rather give
contracts to persons filing upon the lands described therein
which were embraced in the Carey act segregation, and these
water rights or contracts were to be subject to certain con-
ditions and stipulations which were set out and recited at
length. It was stipulated and agreed by this contract that

upon the settler's filing upon the lands and making final payment and proof of improvement on the land, as required by the provisions of law, and making the required payments on their water right contracts and the completion of the irrigation system, that the entire irrigation system, including all the property and franchises belonging thereto and the water appropriations, should be conveyed and transferred to a corporation to thereafter be organized under the laws of the state of Idaho and to be named and designated as the Twin Falls Canal Co., and a copy of the proposed articles of incorporation of the canal company was attached to the contract with the state.

Upon the final completion of the system and conveyance thereof to the canal company and upon final payment on these several water contracts, they were to be surrendered up, and in lieu thereof the settler was to have, at the option of the construction company, one of two kinds of contract or conveyance as stipulated and provided for in the contract with the state. The stipulation in this respect was as follows:

"It is further stipulated and agreed that any and all contracts upon which water rights or shares in the canal are sold, may by express agreement, provide that upon full payment of the purchase price there shall be given at the option of the second party hereto either a warranty deed for an undivided interest in the canal system or shares in the Twin Falls Canal Co., Ltd., hereafter described, one share of stock for one share of water right.

"Whereas it is determined to be necessary to provide a convenient method of transferring the ownership and control of said canal from the said party of the second part herein to the purchasers of shares or water rights in said canals, and of determining their rights among themselves and between said purchasers and the party of the second part herein, and for the purpose of levying and collecting reasonable tolls, charges and assessments for the care and maintenance of said canals, it is further hereby provided that at any time after the completion of the entire system of dam and canals as hereinbefore provided in the specifications and

within seven (7) years from the date of this contract, or at any time prior thereto, upon the consent of the State Board of Land Commissioners, a corporation shall be formed under the laws of the state of Idaho, to be known and called the Twin Falls Canal Company, Limited, having the powers and limitations and with the mutual covenants and agreements substantially as set forth in the draft of the Articles of Incorporation hereunto attached marked Exhibit B. 'But said Articles of Incorporation must conform to the provisions of this contract, and must be approved by the State Board of Land Commissioners before said corporation can be formed.' The said corporation shall be formed by said second party at its expense, all the stock thereof being subscribed by the second party and such other persons, not exceeding six, as may be necessary and all the stock being subscribed by or for said second party. And immediately upon the formation of said corporation said second party shall by good and sufficient deed convey to it the dam and entire system of canals, and the dam and irrigation works and the water rights connected therewith, free of all debt, lien or encumbrance. And upon the formation of said corporation, the shares or water rights theretofore sold or contracted to be sold shall be converted into or replaced by the shares of said corporation, share for share, and from and after the date of the formation of said corporation the party of the second part shall sell to purchasers or owners of lands under the canal system shares of stock of said corporation upon the same terms in all respects as hereinbefore provided for the sale of water rights or shares prior to the formation of such corporation.''

The appellant purchased a water contract and settled upon a tract of land under this canal system. The system was constructed and completed and the construction company exercised its option to organize the canal company and to issue to settlers and purchasers of water contracts certificates of stock in the canal company rather than to execute warranty deeds for an undivided interest in the canal system. The canal company was accordingly incorporated under the general incorporation laws of the state, and the articles of

incorporation provided, among other things, that "the purpose for which this corporation is formed is to own, hold, maintain and operate certain canals and a dam across Snake river in Idaho connected therewith . . . . to construct, maintain and operate for the benefit of its stockholders storage reservoirs for the impounding of water appropriated by it, and generally to do any and all things necessary and proper to be done in conducting the business and supplying to its stockholders water for irrigation and domestic purposes." The proposed articles of incorporation of the canal company which were attached to and made a part of the original contract between the construction company and the state contained the following paragraph:

"But this corporation shall have no power to borrow money or to execute or negotiate any note, bond or other obligation for the payment of money, nor shall it convey by way of deed or mortgage or deed of trust any of its real property or water rights."

Thereafter and subsequent to the purchase by the appellant of his water contract, and by and with the consent of the state, acting through the state board of land commissioners, and at the instance and request of the construction company, the canal company was incorporated and organized for the purpose of taking over this system, and the proposed articles of incorporation were changed in reference to the power of the corporation to borrow money and execute and negotiate notes, bonds and mortgages, and that clause as contained in the articles of incorporation was made to read as follows: "And the corporation shall have power to borrow money and to execute and negotiate notes, bonds or other obligations for the payment of money for the purpose of raising revenue to defray the expense of the maintenance and operation of the canal system."

Subsequent to the organization of the canal company as a corporation under the general incorporation laws of this state, appellant received shares of stock in the corporation which were equivalent to and represented the interest he had purchased by his previous water contract.

Under this state of facts and these conditions, the appellant contends and urges, first, that the canal company is without power or authority to borrow money or execute or negotiate any note, bond or other obligation for the payment of money or to mortgage or encumber the property, water rights or canal system; second, that the execution of a mortgage would be without right or authority; third, that no necessity is shown for a mortgage and bond issue; fourth, that the rights of all settlers on the tract irrigated by this canal system are governed by the terms and conditions of their water contracts made with the construction company, and that these water rights represent a proportionate interest in the irrigation works. These propositions are so blended and interdependent that a general determination of the status of the respective parties under these several contracts and their relation to these two corporations will be determinative of the propositions above advanced.

The first argument advanced by counsel for appellant is that the appellant entered into his contract and purchased his water right from the construction company prior to the organization of the canal company and at a time when the construction company's contract with the state specifically stipulated and provided that the corporation to be thereafter organized and known as the Twin Falls Canal Co., to which the canal system and water rights and franchises should be conveyed, should have no power or authority to borrow money or execute or negotiate any note, bond or other obligation for the payment of money, and should have no authority or power to execute any mortgage or deed of trust to any of its property, and that the canal company is bound by that stipulation and that appellant is in a position to demand its observance and enforcement. As we view this matter, it is unnecessary for us to go into the question of the power of the state and the construction company by mutual consent to change the stipulation contained in the original contract, for the reason that appellant subsequently acquiesced in this change and accepted his certificate of stock in the new corporation, the canal company, and the corporation from which

he accepted his certificates of stock had the contrary provision in its articles of incorporation granting it the full power and authority to execute notes, bonds and mortgages and to hypothecate the property of the corporation for the payment of such loans.

A question almost identical with this was considered by the supreme court of Iowa in *Dempster Mfg. Co. v. Downs*, 126 Iowa, 80, 101 N. W. 735, and the court said: "By accepting the stock in the corporation every stockholder assents to the terms and conditions found in the articles. . . . . The corporation is created by the adoption of the articles. These form the very basis of its existence. Everyone who deals with it or its stock is charged with knowledge of their contents. To the end that the greatest publicity may be attained, as a condition precedent to commencing business they are required to be recorded in the office of the recorder of deeds in the county where its principal place of business is to be kept, and filed and recorded with the Secretary of State. . . . . For the same reason, everyone who acquires certificates of stock must be assumed to know that they were issued by virtue of articles of incorporation, and that these may be found in the office of the Secretary of State. Indeed, the very object of requiring the filing and recording the articles is to give them the same publicity, as nearly as may be, as statutory charters, and render them easily accessible to all who may be interested in ascertaining their contents. These articles are expressive of the relative obligations of the company and stockholders, and inhere in the certificates of stock, in whosesoever hands they may come. The certificates are undoubtedly continuing assurances of ownership, but the ownership is such as is stipulated in the articles." (See, also, *Atty. Gen. v. Lorman Belle Isle Ice Co.*, 59 Mich. 157, 60 Am. Rep. 276, 26 N. W. 311; *Marsh v. Mathias*, 19 Utah, 350, 56 Pac. 1074; Cook on Corporations, sec. 522; *Jones v. Hale*, 32 Or. 465, 52 Pac. 311; *Callahan v. Chilcott Ditch Co.*, 37 Colo. 331, 86 Pac. 123; *Hause v. Mannheimer*, 67 Minn. 194, 69 N. W. 810; *Lincoln Park Chapter v. Swatek*, 204 Ill. 228, 68 N. E. 429.) Whatever merit there might be in

this contention, and whatever cause of complaint the appellant might have had, the remedy would have to be sought against the company with which he contracted, namely, the construction company. He could not pursue his remedy against a corporation which was not in existence at the time his contract was made and which was organized under the laws of the state years after his contract was made with the construction company. When he accepted his certificates of stock in the new corporation and surrendered his original contract, it was his duty to ascertain the powers, liabilities and obligations which the new corporation assumed, and to ascertain if it had the qualifications of the corporation which the construction company had originally contracted to organize and to which this irrigation system was to be transferred.

This brings us to the consideration of the inquiry as to the nature of the property or interest which appellant owns by reason of his certificates of stock in the canal company. It has been suggested that the canal company, which is the operating corporation, is governed by the provisions of chap. 14, title 4 of the Civil Code rather than by the provisions of the general incorporation laws. Chap. 14, title 4 (secs. 3011 to 3026, Rev. Codes), is entitled, "Religious, Social and Benevolent Corporations," and it is evident at once that this is no such corporation. It is neither religious, social nor benevolent. It was not organized under these provisions of the statute. On the contrary, it was organized under the general incorporation laws dealing with private corporations formed for general business purposes. The articles of incorporation recite, "That the undersigned have formed and by these presents do form an incorporation under and pursuant to the provisions of chapter 1, title 4 of the Civil Code, Revised Codes of Idaho, and acts amendatory thereof." Chapter 1, title 4, comprises sections 2710 to 2792, inclusive, which deal with the incorporation and powers of general business corporations. The canal company was not incorporated in compliance with chap. 14 of title 4. The articles of incorporation specifically provide that the corporation shall

acquire, own, hold and operate the canal system, dams and reservoirs, and do all things necessary to be done in "conducting the business of supplying to its stockholders water for irrigation and domestic purposes." The entire irrigation system, including the dams and all water appropriations and all easements and rights of way and franchises acquired by the construction company, were conveyed and transferred to the canal company, and it became the owner in fee of all this property. The land owner who purchased a water right became a stockholder in the corporation, and he had a voice in this corporation equivalent to the number of shares of stock he held, and could exercise that only in the same way that a stockholder in any business corporation can exercise his power as a stockholder. The corporation is the owner of the property, and the certificates of stock represent the interest that each holder thereof has in such corporation. The articles of incorporation of the canal company provide that the corporation shall "distribute among its stockholders and others equally and ratably the water diverted from said Snake river by and through said dam, and canal, and pursuant to the appropriations aforesaid, and for that purpose to fix, charge and collect from its stockholders and others using the water so furnished by it or entitled to use the same, reasonable tolls, rentals, maintenance or service charges, in such manner as may be determined by regulations or by-laws adopted for that purpose, or by means of assessments levied upon its stock in accordance with the laws of the state of Idaho." In other words, this corporation was under the necessity of distributing the water of the system ratably and proportionately among its stockholders, and the ownership of a certificate of stock in this corporation was the only evidence necessary to entitle the holder thereof to the distribution of water upon his lands. It is true that it was not contemplated that the canal company should operate this system for a profit. It was only contemplated that it should collect rates or assessments sufficient to defray all the expenses of operation, maintenance and repairs. There could be no object in collecting more, for the reason that if there should

be any dividends to declare, the payments would be made
to the same people from whom the assessments had been col-
lected.   If this system should be mortgaged and the improba-
ble should occur and the mortgage would have to be fore-
closed and the property sold for the satisfaction thereof, the
purchaser would undoubtedly take the entire property covered
by the mortgage, which in, this case would be the canal sys-
tem, dams, reservoirs, water appropriations, easements and
rights of way, and while the land owners would still have
their certificates of stock in: the canal company, the canal
company would have no irrigation system and no water for
distribution.   If the land owner should thereafter procure
water from the purchaser, he would be under the necessity of
paying such reasonable rates as might be established in con-
formity with law.   In this connection, it should be observed
that a sale at foreclosure could not deprive the land owner
who has once used and applied the water to his lands of his
constitutional right under sec. 4, art. 15, to continue to re-
ceive the water for his land upon payment of reasonable
rates and compliance with such equitable terms and conditions
as might be imposed.   (*Knowles v. New Sweden Irr. Dist.,*
16 Ida. 217, 101 Pac. 81.)   It seems to us, however, that it
is hardly worth while adverting to or considering the possi-
bility of this canal system being sold under foreclosure of
a mortgage.   This or any mortgage executed by the canal
company will have to be paid by assessments levied against
the stockholders in the corporation.   (Sec. 2750, Rev. Codes.)
The stockholders are the land owners who are receiving and
applying the water of the system to their lands.   In other
words, the land owners are the owners of the corporation.
The corporation is their creature.   It, after all, is nothing
more than a holding company.   It would be next to impossi-
ble for all these land owners to get together and join in
transacting the business of the community, and so they are
transacting their business through this corporation formed
under the general laws of the state.   It will be to the interest
of every land owner to have sufficient assessments made from
time to time to defray any indebtedness, whether it be for

current expenses and maintenance or the defraying of a bonded indebtedness. We apprehend that the stockholders could compel the directors of the corporation to levy an assessment for this purpose if they should fail or neglect to do so.

As above observed, the articles of incorporation of the canal company authorize the corporation to execute notes and mortgages and incur indebtedness. In addition to this, the general laws of the state under which this corporation was organized authorizes such a corporation to mortgage and convey any of its real or personal property "other than its franchises of being a corporation." (Sec. 2769, Rev. Codes, amended 1909 Sess. Laws, p. 163.) We have no doubt of the power of this corporation, both under its charter and the statute of the state, to incur the indebtedness and execute the mortgage here in question. Besides, the very nature of the business of this corporation would necessitate the exercise of such a power from time to time. The water carried through this system is diverted from the Snake river by means of a large and expensive dam across the river. If this dam should go out at any time or sustain any serious damage, it would be almost imperative that it be repaired or constructed at once in order to save hundreds and perhaps thousands of settlers from suffering irreparable loss and injury. The same would be true in perhaps a lesser degree if flumes should break and canals should be washed away or destroyed, and for these and many other reasons which might be supposed it is necessary and essential that this corporation have the power to borrow money and the necessary and attendant power to give security for the payment of the money so borrowed.

It is finally urged that if this corporation, the canal company, has the power to borrow money and execute mortgages, that it must be done by a vote of the land owners or stockholders, and that it cannot be done by its directors. This contention seems to rest upon the suggestion previously made that this corporation is governed more by the provisions of chap. 14, title 4 of the Civil Code than by the general

incorporation laws.   Under the provisions of the incorpora-
tion laws with reference to religious, social and benevolent
corporations, mortgages must be authorized by a vote of the
members of the corporation (sec. 3015, Rev. Codes), but, as
previously observed, this chapter does not apply to this canal
company, nor does it apply to a business corporation.   This
corporation is governed by the general incorporation laws,
and under their provisions the directors act for the corpora-
tion (sec. 2728, Rev. Codes, as amended 1909 Sess. Laws,
p. 159), and have the power to borrow money and execute
notes and mortgages (sec. 2769, Rev. Codes, as amended by
1909 Sess. Laws, p. 163), and it is not essential to their valid-
ity that the sanction of the stockholders be had.   (Thomp. on
Corp., secs. 1185, 1192.)

We conclude that the canal company has the power and
authority, both under its articles of incorporation and the
statute of the state, sec. 2769, Rev. Codes, as amended by the
1909 session of the legislature (1909 Sess. Laws, p. 163), to
borrow money and execute bonds and mortgages therefor,
and that the directors of the corporation may do so without
submitting the question to the stockholders.   As to the form,
contents and legal effect of the mortgage in its various stipu-
lations and covenants, we express no opinion, for the reason
that no question is raised or presented in respect thereto.
We have only dealt with the power and authority of the
corporation to mortgage and of the directors to represent
and act for the corporation in so doing.

The judgment should be affirmed, and it is so ordered.
Costs awarded in favor of respondents.

Stewart, J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the
conclusion reached by the majority of the court.   The Twin
Falls Canal Co. is an operating company on a Carey act
project, and was not organized for the purpose of making a
profit for its stockholders, but for the purpose of holding
title to the canal system and water right belonging to the

water users under said Carey act project, and to maintain
and operate said system not for pecuniary profit. The
majority lay more stress upon the title to chap. 14, title 4,
in which are included secs. 3011 to 3026, than the provisions
of the sections therein would warrant. Sec. 3011 provides
as follows: ''Any number of persons associated together for
*any purpose* where pecuniary profit is not their object, may
incorporate themselves as provided in that title,'' and the
majority say in their opinion that the Twin Falls Canal Com-
pany is neither religious, social nor benevolent, and at the
same time concede that it is not organized for pecuniary profit.
The codifier of the statutes gave that chapter a title, which
title only expressed the views of the codifier and not of the
legislature that enacted said law. The provisions of that
chapter clearly include every corporation, *the object* and
*purpose* of which is not pecuniary profit. Sec. 3016 of said
chapter refers to all ''corporations organized for purposes
other than for profit,'' thus clearly showing by that section
that it was intended to include all corporations where pecun-
iary profit was not their object. Such a corporation cannot
organize under the general law by simply so declaring in
their articles of incorporation. If they are organized when
pecuniary profit is not their object, they then come within the
provisions of said chapter, regardless of what may be declared
in their articles of incorporation.

The real object and purpose of said canal company was
to hold the legal or paper title to said canals, etc., and oper-
ate the canal system and do all things necessary to be done
in ''conducting the business of supplying its stockholders
with water for irrigation purposes.'' It is simply an operat-
ing company—a trustee for those who own the equitable title
to said irrigation system and water rights.

Sec. 3015 of said chapter provides that directors or trus-
tees of such corporation may mortgage or sell the real estate
held by them whenever a majority of the members of said
corporation present at a meeting called as therein provided
may so direct by their vote. The directors of such a corpora-
tion have no authority to mortgage or sell the real estate

belonging to it without a majority vote of its stockholders, and the board of directors of said canal company evidently understood that it required a majority vote of the stockholders to authorize them to mortgage all of the property belonging to it, for at a regular session of said board held on August 8, 1911, when the board considered the necessity of improving said canal system and establishing other reservoirs, a resolution was passed by the board directing a special meeting of the stockholders to be called for the 9th of October, 1911, at the hour of 10 o'clock A. M., at the offices of the corporation at Twin Falls, in Twin Falls county, for the purpose of deciding whether ''the board of directors shall be authorized to issue the bonds of this corporation for said amount [$300,000] for the purposes mentioned, together with the rate of interest, time of maturity, and all other matters concerning the issuance of said bonds.'' Said motion was carried unanimously by the five directors and the proper notice was given of such meeting and the meeting was held, and at said meeting the board was not authorized by a majority of the stock to issue said bonds. A majority of the stock was not represented at said meeting. The board evidently ''took the bit in their own teeth,'' and determined they would saddle this indebtedness upon the property belonging to said shareholders without their consent, which, as I view it, they had no right or authority to do. Under said articles of incorporation, and under the law, the board of directors had no authority to mortgage or bond the property belonging to said corporation without the assent of those holding a majority of the stock, which assent must be procured in the regular manner. While the corporation has authority under its articles of incorporation and by-laws to borrow money, no such power is conferred on the board of directors under its articles of incorporation or by-laws. If they are permitted to mortgage this property and the shareholders lose title thereto through foreclosure of the mortgage, the board of directors will be permitted to do indirectly what they are not authorized to do directly; that is, to sell or dispose of such property or put it in a position by mortgaging it that the title will be lost

to the real owners. (See 3 Thompson on Corp., sec. 2563.) A different rule is applicable to ordinary business and commercial corporations whose object and purpose is pecuniary profit.

The majority hold if said mortgage should be foreclosed, the purchaser would take the entire property covered by the mortgage, which would include, in this case, the canal system, dams, reservoir, water appropriations, easements and rights of way, and the land owners would be left with their worthless paper certificates of stock in the defunct canal company, and that company would have no irrigation system and no water for distribution.

It is held by the majority that if the land owner should thereafter procure water from the purchaser, he would be under the necessity of paying such reasonable rates as might be established in conformity with law. In other words, he would be permitted to purchase another water right which might be taken away from him by another board of directors mortgaging the system, provided it was purchased by a corporation. This, no doubt, would be a great benefit to the stockholder to permit him to purchase his water right a second time.

It is a well-settled rule of law that no board of directors has the right and authority to dispose of all the property of the corporation, both real and personal, unless they are given such authority by the articles of incorporation or by by-laws or by a vote of the majority of the stock. Boards of directors of commercial corporations which are organized for the purpose of conducting a business and making a profit out of it are generally given authority by the articles of incorporation and by-laws to contract indebtedness and provide ways and means for the payment of it. But a different rule applies to said canal company, the sole purpose and object of which is to hold title to the property belonging to stockholders, and, as stated in the articles of incorporation, to conduct "the business of supplying its stockholders water for irrigation and domestic purposes." The stockholders of this corporation had the right, under the law, to control,

by a majority vote of the stock, the borrowing of money and giving of a mortgage to secure the payment thereof, but the board of directors had no such authority unless first authorized to do so by the stockholders. Said corporation ought not to be permitted to do anything that would nullify valid liens or encumbrances now existing against said property.

Much more might be said in regard to the board of directors of such a corporation not having autocratic power under the law to sell the property of the corporation outright or to dispose of it indirectly by giving a mortgage thereon, which may by foreclosure as effectually deprive the stockholders of their property as if the board of directors sold it directly, but I will refrain.

The judgment of the trial court ought to be reversed and the stockholders given the opportunity to pass upon the question of incurring said indebtedness, as said indebtedness is not intended to be incurred for the payment of any present indebtedness due from the corporation to anyone.