346 P.2d 592

Golden GASSER, Plaintiff-Appellant,

v.

GARDEN WATER CO., Inc., Defendant-Respondent.

No. 8784.

Supreme Court of Idaho.

Nov. 17, 1959.

A. A. Merrill, Idaho Falls, for appellant.

Holden, Holden & Kidwell, Idaho Falls, for respondent.

PORTER, Chief Justice.

In the year 1897 a number of land owners in Idaho acquired a permit from the State of Wyoming to divert water from Darby Creek in Wyoming for use for irrigation and milling purposes upon certain lands in Idaho. These lands are situated in what is now Teton County. The permit was issued in the name of Wyoming and Darby Bench Canal Company. In 1910 title to this water was by suit quieted in the canal company. Subsequently, in order to provide a better system of distribution to its stockholders, the respondent was organized and acquired all the rights of the Wyoming and Darby Bench Canal Company.

The respondent is a mutual irrigation company organized to distribute water to its shareholders in proportion to the number of shares of stock the shareholder owns in the company. It operates and maintains three main canals in its distribution system. The canal known as the North Hill Canal is the one especially involved in this suit. The appellant has been a stockholder in the respondent for many years. He receives his irrigation water through the North Hill Canal.

Prior to 1949, respondent owned no water dedicated to domestic use. Its contractual duty to deliver irrigation water to its shareholders ended with the irrigation season and did not require the respondent to deliver water during the winter months. However, the Company had for many years permitted a limited amount of water to flow in its canals including the North Hill Canal during the winter from which

flow appellant and others used domestic water. Respondent had an increasing amount of trouble from this winter flow of water in its canals by reason of the water freezing and then overflowing the banks of the canals and flooding roads, fields and buildings.

In 1949 respondent secured an amendment to its permit allocating six-tenths of a cubic foot of water to domestic purposes. It then caused the Garden Water Association, Inc., commonly known as the Pipeline Company, to be organized for the delivery of water to its shareholders for domestic purposes and supplied the water so used. Membership in the Pipeline Company was open to each shareholder in respondent upon payment of his proportionate share of the expense.

Some of the stockholders in respondent had dug wells in an effort to secure a domestic water supply. Others became members of the Pipeline Company. The appellant did neither, but insisted upon the water running in the canals in the wintertime for his domestic use. The delivery of water through the canals during the winter months caused increasing friction in the area. Respondent was threatened with litigation by the County Commissioners of Teton County for permitting its canals to overflow and flood surrounding areas.

The running of water through its canals in the wintertime continued to create a problem for the Company. At a regular meeting of its stockholders held March 8, 1955, the stockholders voted "that the water be turned out of the canals Dec. 15 each year, unless some person makes a application for water and agrees in writing to take care of same and be responsible for any damage caused by water flooding in road or field, or damage to company gates or canals." Thereafter, water was turned out of the canals during the winter months. However, appellant would raise the Company gates so that large and uncontrolled amounts of water would be released to run down the North Hill Canal.

At a special meeting of the Company stockholders held November 3, 1958, the following resolution was adopted:

"Now, Therefore, Be It Resolved, by the stockholders of the corporation that the resolution adopted by the stockholders March 8, 1955, in connection with limiting the use of winter water be modified in the following particulars: That the water be turned out of the company's canal system after the irrigation season at such time each year as shall be fixed by the Board of Directors."

In January, 1958, the control devices and headgates of the Company were damaged by some person so that it could no longer regulate the water in the canals. The directors and officers of the Company closed the headgates to prevent flooding

and resulting damage and filled in the first sixty feet of the North Hill Canal so that water could not be turned into such canal. No stockholder on the North Hill Canal had requested any winter water other than appellant. Appellant at all times refused to comply with the regulation requiring any stockholder desiring the use of the system for winter water to file application in writing agreeing to be responsible for any damage the water might occasion.

Appellant filed this action against respondent praying "That a permanent order and judgment be issued, requiring the defendant to deliver sufficient water to the plaintiff's premises wherewith to supply him with culinary and domestic water." Respondent filed answer to the complaint. The cause was tried to the court sitting without a jury and resulted in Findings of Fact and Conclusions of Law by the court favorable to respondent. Judgment was entered accordingly for respondent. From such judgment, appellant prosecutes this appeal.

We agree with appellant that the right to litigate the question of the right to a flow of water for domestic use during the non-irrigation season has been recognized by our Court. See Arkoosh v. Big Wood Canal Co., 48 Idaho 383, 283 P. 522.

Appellant does not contend in his brief that by reason of the relationship between appellant stockholder and respondent mutual irrigation company, there was any contractual duty upon respondent to permit the flow of water in its canals during the non-irrigation season in order that appellant might have a domestic water supply. Appellant contends that a right to use his water supply for domestic purposes arose under the provisions of Article XV, Section 4, of the Idaho Constitution, upon the application of such water to the irrigation of his lands. Appellant takes the further position that because the Company had permitted water to flow in its canals during the winter months and that appellant had used such water for domestic purposes for more than thirty-years, he had gained a right by adverse possession to have the Company continue to flow water in its canals during the winter months for his use and benefit. His principal assignments of error are to the effect that the judgment is contrary to such contentions.

The respondent sets up several affirmative defenses. It alleges that under Wyoming law the right to the use of water cannot be gained by adverse possession. That Article XV, Section 4, of the Idaho Constitution refers to sale and rental of water and is not governing in the case of water distributed by a mutual irrigation company. That a mutual irrigation company may adopt reasonable rules and regulations for the internal operation of its affairs, and that the regulation adopted by

the stockholders of respondent requiring indemnity against damages by reason of flooding is a reasonable regulation.

However, we do not deem it necessary to discuss and determine all these contentions under our view of the controlling issue in this case.

By its answer, respondent specifically alleges "That the corporation at all times has agreed and does agree to permit the plaintiff to use said corporate ditch system for the purpose of conveying water to his premises in the winter at such time as the plaintiff shall agree to be responsible for and take care of such water and hold the company harmless from the use thereof by the plaintiff."

Neither must it be overlooked that the dedication of six-tenths of a cubic foot of water by respondent to domestic use was a taking of a proportionate share of the waters of all stockholders including appellant to make up this water for domestic use and that appellant, the same as other stockholders, owns a proportionate share of the water now dedicated to domestic use.

The controlling question in this case then is not as to the ownership of a domestic water right by appellant, but is whether respondent has the right to make reasonable regulations for the delivery of water to its stockholders and the main-

tenance of its system, and whether the regulation in question is a reasonable one.

Respondent, as a mutual irrigation corporation, has the right to make reasonable rules and regulations governing the use of its system and the distribution of water to its shareholders. In 3 Kinney on Irrigation and Water Rights, Second Edition, 2674, § 1488, the general rule is laid down as follows:

"Power of corporations to make rules and regulations.—As is the case with other water corporations, mutual corporations may also adopt such rules and regulations not in violation of law governing the distribution and use of the water furnished among their shareholders as are equitable and reasonable under the circumstances of the case."

In Application of Johnston, 69 Idaho 139, at page 144, 204 P.2d 434, at page 437, in discussing the rights of a mutual water corporation, we said:

"* * * However, such a corporation has the usual rights pertaining to corporations with reference to the handling of its affairs and in dealing with its stockholders."

See, generally, Wilterding v. Green, 4 Idaho 773, 45 P. 134; Hobbs v. Twin Falls Canal Co., 24 Idaho 380, 133 P. 899; Young v. Extension Ditch Co., 28 Idaho 775, 156 P. 917; Rocky Ford Canal, Reservoir, Land, Loan & Trust Co. v. Simpson, 5

Colo.App. 30, 36 P. 638; Fuller v. Azusa Irrigating Co., 138 Cal. 204, 71 P. 98.

In connection with the reasonableness of the regulation adopted by the stockholders of respondent not to permit water to flow in its canal system in the wintertime for domestic use unless the shareholder requesting the flow of such water agrees to indemnify the company against damages to others and to its canal system, the trial court, among others, made the following Finding of Fact:

"That Garden Water Co. has also acquired from the State of Wyoming a permit to have *six* (six-tenths) cubic feet of the aforementioned appropriation withdrawn for a preferred use to furnish water for domestic purposes to stockholders of Garden Water Co; that during the winter months the channel of North Hill Canal frequently becomes filled with ice commingled with snow and that as a result thereof is backed up and flows over the banks onto roads and adjacent property;

"That this flooding of the canal in winter months has become a serious problem in the area known as Darby in the County of Teton and that considerable damage to property, hardship, inconvenience and expense has resulted therefrom; that this freezing condition of North Hill Canal has become a hazard, detrimental not only to persons living in the area but to the entire County of Teton;

"That in an attempt to overcome this hazard the directors of Garden Water Co., so authorized by their stockholders, closed the said canal during winter months; that said directors made arrangements for stockholders of the company to obtain water for domestic purposes through winter months; that plaintiff, Golden Gasser, is entitled to have his winter water delivered for domestic purposes through the pipeline thus arranged for to his premises upon payment of the ordinary, usual and reasonable fee therefor; that the action of the directors was taken as a result of stockholders' and directors' meetings and hearings as required by law with an intent to serve the best interests of a majority of their stockholders; that their action in this regard was reasonable;"

The question of whether to permit water to flow through their canal system during the winter months is not an uncommon one confronting mutual irrigation companies. A restriction on such flow by the stockholders of the Company is not unreasonable if necessary to protect the Company and its canal system from damages and is intended to serve the best interests of a majority of the stockholders. We conclude that the Finding of Fact of the trial court

that the regulation requiring appellant to indemnify the Company before granting his application for the flow of water in the Company's canal system in the wintertime for his domestic use is a reasonable regulation, is sustained by the evidence.

■ The trial court was in error in allowing respondent costs of twenty-five cents per mile one way for each day's attendance of a witness at the trial. Under the provisions of Section 9–1601, I.C., the witnesses are allowed mileage only once. The extra mileage allowances amounting to the sum of $18.00 should be deducted from the total allowance for costs, leaving a balance of $371.35.

In its findings of fact, the trial court inadvertently referred to the amount of water converted to domestic use under the amendment to its permit as six cubic feet of water. An examination of the amendment shows that the amount of water converted to domestic use was six-tenths of a cubic foot of water. The finding is corrected in this respect.

We have examined the other assignments of error by appellant and find them to be without merit.

The judgment is modified by reducing the allowance for costs from $389.35 to $371.35, and, as modified, the judgment is affirmed. Costs awarded to respondent.

TAYLOR, SMITH, KNUDSON and McQUADE, JJ., concur.