SIMPSON'S COLONY RECLAMATION CANAL COM-
PANY, a Nevada Corporation, JOHN SQUIRE
DRENDEL and FRED SCHWAKE, Appellants, v.
JAMES HUTZLER and ORA HUTZLER, Respond-
ents.

No. 9499

May 24, 1979                                      595 P.2d 383

*Guild, Hagen & Clark, Ltd.,* and *James W. Johnson,* Reno,
for Appellants.

*Robert E. Rose,* Las Vegas, for Respondents.

## OPINION

By the Court, Batjer, J.:

Respondents sought an injunction to restrain appellants
from interfering with respondents' right to receive water for

the irrigation of 16 acres of land along the northern boundary of respondents' property through an irrigation lateral referred to as the "Strieby Ditch". In their answer, appellants contended that respondents had failed to comply with decisions restricting respondents' right to use the "Strieby Ditch" made by the board of directors of the Simpson's Colony Reclamation Canal Company, referred to as the "Canal Company".

The trial court found there was insufficient evidence of an agreement relating to the abandonment of the use of the "Strieby Ditch" by the respondents and their predecessor in interest. That court further found ditch rights to be interests in land and any agreement affecting those rights must be in writing[1] to satisfy NRS 111.210 and 111.220, and that the Canal Company had no right to deny respondents water through the

---

[1]*See* Tusi v. Jacobsen, 293 P. 587, *reh. den.* 293 P. 939 (Or. 1930); Annot., 71 A.L.R. 1364 (1931).

"Strieby Ditch". Judgment, from which this appeal has been taken, was entered confirming respondents' right to irrigate the northern portion of their ranch through the "Strieby Ditch".

The Canal Company transports water from the Walker River to diversion points selected by shareholders and approved by the board of directors. Respondents and their predecessors in interest possess a right to appropriate certain waters from the Walker River pursuant to State application No. 2620 A.D. 1913. Respondents received title to their property in 1971. The property carries with it shares in the Canal Company and entitles the owner to the delivery of water.

On April 15, 1920, respondents' predecessor in interest, W. V. Newell, entered into an agreement with the Canal Company for issuance to him of shares of stock in the Company and for granting to the Company the right to enter upon his lands and to construct and maintain thereon any and all laterals, sub-laterals, ditches or flumes which in the judgment of the board of directors of the Canal Company would be necessary or useful in conducting water from the main canal to other lands (Drendel-Bacon Properties). The covenants contained in that agreement extended to and were binding on the heirs, executors, administrators, successors and assigns of the parties forever. This same agreement is carried forward on the reverse side of each stock certificate issued to and accepted by the successive owners of the property, including the respondents.

Immediately after the execution of the agreement between Newell and the Canal Company, Louis Olds, who was then the owner of the Drendel-Bacon property, constructed the "Strieby Ditch" across the Newell (now Hutzler) property in order to irrigate his property.

Sometime before the year 1955, John and Nancy Roberts acquired title to the entire Drendel-Bacon and Hutzler properties; therefore, the easement for the lateral constructed by Olds ("Strieby Ditch") merged into the Roberts' ownership and was extinguished. Capital Candy Company v. Savard, 369 A.2d 1363 (Vt. 1976); Roberts v. Monroe, 75 So.2d 492 (Ala. 1954); Village of Lake Bluff v. Dalitsch, 114 N.E.2d 654 (Ill. 1953); Restatement (First) of Property §§ 497–499 (1944). During their ownership the Roberts used the "Strieby Ditch" to irrigate the Drendel-Bacon property as well as the northern 16 acres of the Hutzler property.

Drendel's predecessor, Sam Strieby, acquired the dominant estate (the Olds property) from John and Nancy Roberts on October 10, 1955. Anything occurring prior to that date is merely historical. The Drendel-Bacon right to use the "Strieby

Ditch'' originates in the deed from Roberts to Strieby, dated October 10, 1955. Included in the conveyance were rights of ways to use ditches on the property owned by Roberts. They were not exclusive rights of way, but were available for use and were jointly used by Roberts and Strieby and their successors in title until on or about May 30, 1976, when appellants refused to allow respondents to use the ''Strieby Ditch'' and respondents filed this action.

In 1960, as part of an improvement program, the Canal Company required measuring devices on all takeouts (diversion points). Construction of ditches from the diversion point to his place of use was established as the shareholder's responsibility. Although much emphasis has been placed on the scope of the easement, the most important issue is whether the directors of the Canal Company could categorically require respondents to irrigate all of their land from a watergate at takeout ''a'' near the center of their property and refuse to deliver any water to them from the watergate at takeout ''c'' (see illustration).

The record reveals that the Canal Company had advised respondents and their predecessors in title of its desire to have the Hutzler property irrigated entirely from the watergate situated at takeout ''a''. However, it appears that such a request was unreasonable in light of the fact that it is much more geographically practical and economical to irrigate via ''c'' rather that ''a''.

Although a board of directors enjoys rather broad powers in the administration of an irrigation ditch, it is nevertheless precluded from taking unreasonable or arbitrary action. Gasser v. Garden Water Co., 346 P.2d 592 (Idaho 1959). *See* Wilterding v. Green, 45 P. 134 (Idaho 1896); Fuller v. Azusa Irrigating Co., 71 P. 98 (Cal. 1902). Here, the directors of the Canal Company are not without a remedy. The respondents, as stockholders in the Canal Company and as the successors in title to W. V. Newell, have become contractually bound to allow the Canal Company to go on their property and construct and maintain laterals, ditches and flumes which in the judgment of the board of directors may be necessary and useful, and to pay any assessment levied by the board for such construction or maintenance. The directors could, on proper notice to the respondents, allow them to irrigate from the ''Strieby Ditch'' only when it was not being used by the dominant property. If this proved unworkable, then the Canal Company could either require the respondents to put a measuring flume or measuring flumes in the ''Strieby Ditch'', or the directors of the Canal Company could have these measuring flumes placed in the ''Strieby Ditch'' and assess the respondents for the costs. If

these or other reasonable steps fail, then after notice and an opportunity to be heard, the board of directors, on good cause shown, could refuse to deliver water to the respondents from the main canal through the "Strieby Ditch" until compliance was achieved.

The judgment of the district court is affirmed.

Mowbray, C. J., and Thompson and Gunderson, JJ., and Breen, D. J.,[2] concur.