THOMAS SANDERSON, for Himself and All Others Similarly Situated, Appellant, v. SALMON RIVER CANAL COMPANY, LIMITED, a Corporation, Respondent.

[263 Pac. 32.]

POWERS OF CORPORATIONS — CHARTER — ARTICLES OF INCORPORATION— IMPLIED POWERS—CONSTITUTIONAL LAW—CAREY ACT CORPORATIONS —MAINTENANCE LIEN—REPEAL AND AMENDMENT OF LEGISLATIVE ACT — IMPAIRMENT OF OBLIGATION OF CONTRACT — VOID ASSESSMENTS.

1.   Since powers of a corporation, like its corporate existence, are derived from grant by sovereign creating it, it has no powers except such as are expressly or impliedly conferred by its charter.

2.   "Charter" of corporation, formed under general law conferring on it only ordinary powers, does not consist of articles of incorporation alone, but of such articles taken in connection with law under which organization took place.

3.   Canal corporation, organized under the Carey Act (43 U. S. C. A., sec. 641; U. S. Comp. Stats., sec. 4685), to maintain and control a canal and irrigation system and to acquire water rights, and doing all things necessary and proper in supplying stockholders with water, has, under C. S., sec. 4752, implied authority to borrow money and to mortgage its property as security without consent of majority of stockholders.

4.   Maintenance lien statute (Laws 1925, chap. 107), which repealed C. S., sec. 3039, and amended sec. 3040, and which did not restrict operation of the act to canal corporations organized under the Carey Act (43 U. S. C. A., sec. 641; U. S. Comp. Stats., sec. 4685), *held* not unconstitutional as improper classification or denial of equal protection.

5.   A legislative act should be held constitutional until it is shown beyond reasonable doubt that it is not constitutional.

6.   A law should not be held to be void as repugnant to its constitution in a doubtful case.

7.   Laws 1925, chap. 107, repealing C. S., sec. 3039, and amending sec. 3040, relating to collection of maintenance charges by canal companies, *held* not unconstitutional within Const. U. S., art. 1, sec. 10, and state Const., art 1, sec. 16, as impairing mortgages of land owner on lands within project where indebtedness secured by his mortgages was not terminated or lessened in amount, nor was he denied right to enforce his contracts.

8.   Generally, a statute which does not act on contract itself, but merely on property which is subject of contract, may not be said to impair obligation of contract.

Points Decided.

9. Since canal company, organized under the Carey Act (43 U. S. C. A., sec. 641; U. S. Comp. Stats., sec. 4685) to maintain a canal and irrigation system within the state, could only make assessments on its capital stock, as provided by C. S., secs. 4733–4736, continuing direct annual assessment on its capital stock, which extended over a period of twenty years, and each assessment, with one exception, was in excess of ten per cent of capital stock named in its articles of incorporation, *held* void, it not being authorized by Laws 1925, chap. 107, permitting collection of reasonable assessments, since C. S., sec. 4734, governs where limitation on powers to make assessments is indefinite.

10. Mere authorization for assessments contained in articles of incorporation of a company would not empower it to levy assessment in any amount it deems advisable, if a limitation on amount of assessment on its capital stock is contained in the statutes.

ON PETITION FOR REHEARING.

11. When assessments are levied on capital stock of a canal corporation organized under the Carey Act (43 U. S. C. A., sec. 641; U. S. Comp. Stats. sec. 4685), amount and manner of levies are governed by C. S., secs. 4733–4736; but, if assessments are levied under section 3040, as amended by Laws 1925, chap. 107, relating to collection of maintenance charges by canal companies, then levies may be for reasonable amount, based on number of shares or water rights, or proportioned to amount of water rights, or proportioned to amount of water used or owned, or by both methods; but procedure to be followed thereunder must comply with C. S., chap. 138, art. 1, as amended, of which sec. 3040 as amended is a part.

Publisher's Note.

1. See 7 R. C. L. 526.

2. See 7 R. C. L. 537.

3. Corporation's power to borrow money, see note in 111 Am. St. 309. See, also, 7 R. C. L. 593.

5. See 6 R. C. L. 98.

6. See 6 R. C. L. 97.

8. When statutes deemed to impair contracts, see note in 79 Am. Dec. 495. See, also, 6 R. C. L. 328.

See Constitutional Law, 12 C. J., sec. 222, p. 797, n. 34; sec. 699, p. 1057, n. 90; sec. 733, p. 1071, n. 7.

Corporations, 14 C. J., sec. 1286, p. 847, n. 18; 14a C. J., sec. 2075, p. 246, n. 69; sec. 2094, p. 258, n. 38.

Waters, 40 Cyc., p. 826, n. 68, 71, p. 835, n. 52.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Hugh A. Baker, Judge.

Action by Thomas Sanderson, a stockholder of defendant company, to enjoin it from issuing bonds, executing mortgage and levying assessment on stock. Judgment for defendant. Reversed.

Richards & Haga, for Appellant.

Authority to levy and collect assessments on fully paid corporate stock must be found either in the statute or the articles of incorporation and in Idaho such authority is conferred by C. S., art. 6, chap. 186. (*Wall v. Basin Mining Co.*, 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013; 6 Cal. Jur., p. 951; *Seyberth v. American Commander Min. Co.*, 42 Ida. 254, 245 Pac. 392; C. S., sec. 4733.)

The proposed stock assessment or assessments of respondent are in excess of ten per cent of the capital stock of the company and are therefore illegal and void. (C. S., sec. 4734; Cal. Civ. Code, sec. 332; *Santa Cruz Ry. Co. v. Spreckles*, 65 Cal. 193, 3 Pac. 661; *Pacific Fruit Co. v. Coon*, 107 Cal. 447, 40 Pac. 542; *Brown v. San Gabriel etc. Co.*, 22 Cal. App. 682, 136 Pac. 542; *San Joaquin etc. Co. v. Beecher*, 101 Cal. 70, 35 Pac. 349; *Kohler v. Agassiz*, 99 Cal. 9, 33 Pac. 741; *Bottle Mountain Min. etc Co. v. Kern*, 9 Cal. App. 527, 99 Pac. 994.)

One stock assessment cannot be levied while a previous one remains unpaid, unless the power of the corporation has been exercised for the purpose of collecting the previous assessment. (C. S., sec. 4735; Cal. Civ. Code, sec. 333; *Strouse v. Sylvester*, 6 Cal. Unrep. 798, 66 Pac. 660.)

The maintenance lien statute, C. S., chap. 138, art. 1, is unconstitutional and void because of improper classification. (*Crom v. Frahm*, 33 Ida. 314, 193 Pac. 1013; *Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. ed. 679; 6 R. C. L., p. 381; *Bedford Quarries*

*v. Bough,* 168 Ind. 671, 80 N. E. 529, 14 L. R. A., N. S., 418; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819, 840; *Gulf C. & S. F. Ry. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666.)

An unconstitutional statute is null, void and nonexistent and cannot be revitalized by mere amendment of one section incorporating other parts of the void law by reference. (1 Cooley, Const. Lim., 8th ed., pp. 382–384; *Norton v. Shelby County,* 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. ed. 178, 186; Const., art. 3, sec. 18.)

Chapter 107 of the 1925 Session Laws was adopted subsequent to the execution of appellant's mortgages, lessened the value thereof and accordingly impaired the obligation of contract in violation of the state and federal constitutions. (U. S. Const., art 1, sec. 10; Ida. Const., art. 1, sec. 16; 12 C. J. 1057, 1058; *Fidelity State Bank v. North Fork Highway Dist.,* 35 Ida. 797, 31 A. L. R. 781, 209 Pac. 449.)

A vested mortgage lien may not be impaired or its priority displaced by a subsequent statute. (12 C. J. 1071, 1072; *Crowther v. Fidelity Ins. Co.,* 85 Fed. 41, 29 C. C. A. 1.)

A corporation cannot sell all its property without the consent of all or at least a majority of its stockholders and the mortgage involved here is invalid over the objection of appellant, a nonconsenting stockholder, and because a majority of the outstanding capital stock did not authorize it. (3 Fletcher, Cyc. Corp., sec. 1998; 2 Fletcher, Cyc. Corp., secs. 1203, 1206; 6 Fletcher, Cyc. Corp., sec. 4011.)

Corporate property held subject to limitations as to use or subject to a trust cannot be so disposed of as to divert it from such use or trust and the proposed mortgage would divert the irrigation system and water rights from the trust established thereon by law in favor of the settlers. (2 Fletcher, Cyc. Corp., sec. 1194; 6 Fletcher, Cyc. Corp., sec. 4012.)

If appellant had not sought the relief prayed for in this action, he might be estopped from raising the question after

the bonds had been sold, and he is therefore entitled to the injunction prayed for. (*Huxtable v. Berg,* 98 Wash. 616, 168 Pac. 187; *Hall v. Eagle Rock etc. Co.,* 5 Ida. 551, 51 Pac. 110.)

James R. Bothwell, for Respondent.

We have no doubt of the power of the Salmon River Canal Company, both under its charter and the statutes of the state, to incur the indebtedness and execute the mortgage here in question. (*Hobbs v. Twin Falls Canal Co.,* 24 Ida. 380, 133 Pac. 899.)

The levying of a continuing direct annual assessment upon the shares of stock, water rights and lands to which said shares of stock and water rights are now or shall hereinafter be made appurtenant as contained in sec. 3 of the resolution is valid. (Sec. 2, art. of Inc. S. R. C. Co., as quoted above; secs. 9 and 12, By-Laws S. R. C. Co., as above cited; *Hobbs v. Twin Falls Canal Co., supra.*)

"Ordinarily an assessment may be levied and collected on fully paid stock where authority to do so is conferred by the articles of incorporation." (14 C. J., sec. 1286; *Nelson v. Keith-O'Brien Co.,* 32 Utah, 396, 91 Pac. 30; *Forsythe v. Selma Mines Co.,* 58 Utah, 142, 197 Pac. 586; *Huxtable et al. v. Berg,* 98 Wash. 616, 168 Pac. 187; *Wall v. Basin Mining Co.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013.)

"Where the articles of incorporation make the stock assessable without fixing the amount or prescribing any limit it may be assessed to the extent and for the amount necessary to carry on the corporate business and to save and preserve the property of the corporation and to pay and meet its just debts and obligations." (2 Fletcher, Ency. Corp. (1924 Supp.), sec. 4373. C. S., sec. 3040, amended by Sess. Laws 1925, p. 154.)

The maintenance statute as amended is not subject to the objection of improper classification. (*Crom v. Frahm,* 33 Ida. 314, 193 Pac. 1013; 6 R. C. L., p. 411, sec. 408, p. 421, sec. 415; *State v. Horn,* 27 Ida. 782, 152 Pac. 275;

*German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. ed. 1011, L. R. A. 1915C, 1189; *Jones v. Power County,* 27 Ida. 656, 150 Pac. 35; *Idaho Mut. etc. Co. v. Myer,* 10 Ida. 294, 77 Pac. 628; *Thielke v. Albee,* 79 Or. 48, 153 Pac. 793; *Murphy v. California,* 225 U. S. 623, 32 Sup. Ct. 697, 56 L. ed. 1229, 41 L. R. A., N. S., 153.)

If objection is made to the maintenance lien statute on the ground of improper classification we reply that the only one who can complain of discrimination is the Carey Act Construction Company, in this instance, the Twin Falls Salmon River Land and Water Company. ·(*Ex parte Washer,* 78 Cal. App. 759, 248 Pac. 1068; 12 C. J. 768, and cases there cited.)

"The directors of any corporation formed or existing under the laws of this state after one-fourth of its capital stock has been subscribed may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof in the manner and form and to the extent herein provided." (C. S., sec. 4733; *Hobbs v. Twin Falls Canal Co.,* 24 Ida. 380, 133 Pac. 899.)

The stockholders of the respondent, Salmon River Canal Company, Limited, authorized the action taken by the board of directors at a special meeting duly and regularly called for that purpose. (Sec. 16, By-Laws River Canal Company, Limited.)

E. M. Wolfe, *Amicus Curiae,* cites no authorities on points decided.

BUDGE, J.—This action was brought by appellant on his own behalf, and on behalf of all others similarly situated, against respondent corporation to enjoin it and its officers and directors from issuing bonds of the corporation and using the proceeds thereof to buy up the water rights from 7,000 acres of land in the Salmon River project, thus improving the water right for the balance of the project; to enjoin it from mortgaging the entire irrigation system and

all water rights of the project to secure payment of such bond issue; and from levying a continuing annual assessment on the stock of the corporation for the purpose of repaying the interest and principal of such bonds.

Upon issues being framed, the cause was tried to the court, and findings of fact, conclusions of law and decree were entered, denying the injunction, authorizing the execution of the bonds and the mortgage securing the same, and declaring the lien of the levies and assessments therefor superior to all other liens on the lands, water rights and water stock of the project. From the decree so entered this appeal is prosecuted.

Respondent is a Carey Act operating company, organized pursuant to the provisions of a contract entered into between the state of Idaho and the Twin Falls Salmon River Land & Water Company for the building of the irrigation works and the sale of shares or water rights under the canal and irrigation system to persons filing upon lands within the project and the owners of other lands susceptible of irrigation from the canal system. Title to the system was maintained in the Twin Falls Salmon River Land & Water Company until the completion of the works, when it conveyed by deed to respondent the property, consisting of reservoir, dam, canals, laterals, diversion works, headgates, weirs, measuring devices, flumes, rights of way, water rights, water appropriations, etc.

The express purposes of the organization of respondent company are set out in its articles of incorporation and by-laws, as follows:

"That the purposes for which it is formed are to own, acquire, hold, manage, control, operate and maintain that certain canal and irrigation system now under construction by the Twin Falls Salmon River Land and Water Company. . . . ; also, for the purpose of acquiring the water rights taken up for the irrigation of the lands under said irrigation system, and acquiring other water rights in case the same may be deemed desirable; to acquire, hold, own, maintain and control the water from Salmon River

or other sources of supply . . . . ; to fix, charge and collect from its stockholders tolls, rentals, assessments and maintenance charges based upon the number of shares of stock held by each person or proportioned to the amount of water used or owned or by both of said methods or by assessment upon the capital stock levied in accordance with the laws of Idaho, or by such other method as may be prescribed in the by-laws of said corporation . . . . ; to construct, operate and maintain canals, ditches and reservoirs and generally to do any and all things necessary or proper to be done in conducting the business of supplying its stockholders with water for irrigation and domestic use and other useful and beneficial purpose.'' (Sec. 2, Articles of Incorporation.)

''This corporation is not organized for profit, but for the purpose of conducting the said irrigation works, but inasmuch as it may be necessary to accumulate a surplus in order to conduct the operations of the company in a businesslike manner, or in order to provide for the payment of debts this corporation may make such reasonable assessments for the business purposes of the organization as may be necessary, either by way of maintenance charges or by assessments upon the capital stock of the corporation appurtenant to patented land.'' (Sec. 9, By-Laws.)

'' . . . . the board of directors may include in the charges of maintenance and operation above specified a reasonable amount for sinking fund for the making of repairs or alterations and a reasonable amount for a sinking fund to meet the expenses of ownership, operation, management and control of the system and also any amount authorized by Section 9 of these By-Laws. The Board may provide that the maintenance charge herein provided for may be paid either in a single amount on the first day of April of each year as hereinbefore specified, or it may be paid in instalments at such times as the board may provide. The corporation shall have power to borrow money for the purpose of meeting its obligations in connection with the ownership, operation, repair, maintenance and con-

trol of the irrigation system. The maintenance charge or charges provided for in this and other sections of these by-laws shall be, and they are hereby made and constituted a lien upon the shares of stock and upon the water rights represented thereby and upon the land described in said shares of stock and the corporation may enforce said lien by suit or in any manner that may be prescribed by the by-laws of this corporation or the laws of the state of Idaho, either now in force or which may hereafter be in force. . . . . " (Sec. 12, By-Laws.)

It may be of interest to observe that the agreement entered into between the state and the Twin Falls Salmon River Land & Water Company at first involved the irrigation of 150,000 acres of land, segregated under the Carey Act and amendments thereto, and state statutes made applicable to Carey Act legislation; the state receiving from the federal government under contract the Carey Act lands within the project, and later on entering into a contract with the Twin Falls Salmon River Land & Water Company for the construction of a reservoir and canal system for the proper irrigation of the 150,000 acres. Thereafter it was found that there was not sufficient water to irrigate 150,000 acres of land within the project, and an understanding was had between the state and the construction company that the works should only cover 100,000 acres, with leave to enlarge the project if found desirable. Later on it was found that there was not sufficient water to irrigate 100,000 acres, and a further agreement was entered into between the parties whereby the project was reduced to 80,000 acres, which latter acreage was to be thrown open to settlers. Very soon thereafter 73,340 acres of the 80,000 acres were entered by settlers. On still further investigation of the water supply it was found that there would not be sufficient water to reclaim more than 50,000 acres of land within the project. Litigation followed, both in the federal and state courts, resulting in a reduction of irrigable land in the project to 35,000 acres. (See *Twin Falls Salmon River Land & Water Co. v. Caldwell,* 242

Fed. 177, 155 C. C. A. 17; *Twin Falls Salmon River Land & Water Co. v. Caldwell,* 272 Fed. 356; *Caldwell v. Twin Falls Salmon River Land & Water Co.,* 225 Fed. 588; *Twin Falls Salmon River Land & Water Co. v. Davis,* 267 Fed. 382; *State v. Twin Falls etc. Water Co.,* 30 Ida. 41, 73, 166 Pac. 220; *Sanderson v. Salmon River C. Co., Ltd.,* 34 Ida. 145, 199 Pac. 999; *Sanderson v. Salmon River Canal Co.,* 34 Ida. 303, 26 A. L. R. 292, 200 Pac. 341; *Salmon River Canal Co. v. District Court,* 38 Ida. 377, 221 Pac. 135; *Parrott v. Twin Falls etc. Water Co.,* 32 Ida. 759, 188 Pac. 451; *Glavin v. Salmon River Canal Co., Ltd.,* 39 Ida. 3, 226 Pac. 739.)

The authorized capital stock of respondent is 150,000 shares of the par value of $1 per share, of which approximately 60,000 shares have been subscribed and are outstanding fully paid. The proposed bond issue approved by the board of directors is for $565,000, to be secured by mortgage upon all of the property of respondent company, including the irrigation system and water rights and a right to levy tolls, assessments and maintenance liens. Principal and interest on the bonds are proposed to be paid by what is called a continuing direct annual assess· ment upon the shares of stock for twenty years, the amounts of the annual levies varying from $16,950 in 1927 to $149,350 in 1947. These assessments would be sufficient to retire the entire bond issue, with interest at six per cent and the total payments of principal and interest would amount to more than $1,000,000.

Appellant is a land owner on the project and owns some 128 shares of stock in respondent company, and is also the pledgee of some 270 additional shares of such stock as collateral to mortgages which he holds on other project lands.

One of three principal points urged by appellant is that respondent company has no power to mortgage its property without the consent of a majority of its stockholders.

[1–3] The powers of a corporation, like its corporate existence, are derived from a grant by the state or other sovereign creating it, and it has no powers except such as are

expressly or impliedly conferred by its charter. (14a C. J.,
p. 246, sec. 2075.) The charter of a corporation formed
under a general law conferring on it only the ordinary
corporate powers does not consist of the articles of incor-
poration alone, but of such articles taken in connection
with the law under which the organization takes place, and
the provisions of the law enter into and form part of the
charter. (7 R. C. L., p. 537, sec. 520.) With these prin-
ciples in mind, let us look to the provisions of the general
law under which respondent company was created and to its
articles of incorporation, to ascertain if there is any author-
ity on the part of respondent company to execute a mort-
gage on its property.

It is provided in C. S., sec. 4752, that every corporation,
as such, has power to sell, lease, assign, transfer, *mortgage*
or convey any rights, privileges, franchises, real or personal
property of the corporation, other than its franchises of
being a corporation. The articles of incorporation of re-
spondent company recite that the purposes for which it is
formed are to own, acquire, hold, manage, control, operate
and maintain a canal system, as well as to acquire the water
rights taken up for the irrigation of the lands under said
irrigation system, and to acquire other water rights in case
the same may be deemed desirable, and generally to do any
and all things necessary or proper to be done in conducting
the business of supplying its stockholders with water for
irrigation and domestic use and other useful and beneficial
purposes.

It is seen that the law expressly authorizes corporations
to mortgage their real and personal property, and we think
a fair interpretation of the provisions of the articles of in-
corporation of respondent company, as above referred to,
justifies the conclusion that, in order to carry out the pur-
poses for which the company was organized, it would have
implied authority thereby to borrow money for those pur-
poses and to execute a mortgage on its property as security
therefor. But the question has been set at rest by the
decision of this court in *Hobbs v. Twin Falls Canal Co.*,

24 Ida. 380, 133 Pac. 899, and in abiding by that decision we quote the following statements therein contained as effectively disposing of the same proposition in the case at bar:

" . . . . This corporation is governed by the general incorporation laws, and under their provisions the directors act for the corporation (sec. 2728, Rev. Codes, as amended 1909 Sess. Laws, p. 159) (now C. S., sec. 4711), and have the power to borrow money and execute notes and mortgages (sec. 2769, Rev. Codes, as amended by 1909 Sess. Laws, p. 163 (now C. S., sec. 4752), and it is not essential to their validity that the sanction of the stockholders be had. (Thomp. on Corp., secs. 1185, 1192.)

"We conclude that the canal company has the power and authority, both under its articles of incorporation and the statute of the state, sec. 2769, Rev. Codes, as amended by the 1909 session of the legislature, 1909 Sess. Laws, p. 163 (C. S., sec. 4752), to borrow money and execute bonds and mortgages therefor, and that the directors of the corporation may do so without submitting the question to the stockholders."

A second point urged by appellant is that the so-called maintenance lien statute is unconstitutional and void. This statute is C. S., chap. 138, art. 1, including C. S., sec. 3040, as amended by Sess. Laws 1925, chap. 107, pp. 153, 154. Appellant contends under this head that C. S., chap. 138, art. 1, in which was contained C. S., sec. 3040, before its amendment, and the section as amended, are both unconstitutional, first directing the attack to C. S., chap. 138, art. 1, as unconstitutional for improper classification and as a denial of equal protection of the laws, in violation of the fourteenth amendment to the constitution of the United States. It is argued that this statute is unconstitutional for the same reasons advanced by this court in *Crom v. Frahm*, 33 Ida. 314, 193 Pac. 1013, as to C. S., sec. 3050, and that since the amendment to C. S., sec. 3040, by the 1925 session of the legislature contains most of the same objections found to C. S., sec. 3050, it is just as illogical,

unreasonable and arbitrary as to classification as the original law. Furthermore, it is insisted, if the original law was unconstitutional, it was null and void and could not be revitalized by repealing one section, amending another at length and adopting the remaining provisions of the null and void statute by reference. Appellant also contends that the lien purported to be authorized under C. S., sec. 3040, as amended, *supra,* and extended to respondent company by the findings of the trial court herein, makes it a clear violation of the rights of appellant under the mortgages which he holds and an impairment of the obligation of his contracts, under the provisions of both federal and state constitutions against the passage of any law impairing the obligation of contracts.

[4–6] The act of 1925 (Sess. Laws 1925, chap. 107, pp. 153, 154), repealed C. S., sec. 3039, and amended C. S., sec. 3040. The amendment did not restrict the operation of the act to corporations operating irrigation systems under the Carey Act, and otherwise removed constitutionally objectionable provisions from C. S., chap. 138, art. 1. It is insisted that it was attempted to remove constitutional objections by amending certain provisions of C. S., chap. 138, and that the amendment is subject to the objection that an original act which is unconstitutional cannot be revitalized by amendment. It would seem that the amendment of 1925 of C. S., sec. 3040, is complete in and of itself, and not subject to the objection that it contains improper classification or is a denial of equal protection of the laws, and if we are correct in so holding, the amendment would not be vitiated by mere reference to the provisions set forth in a former act. Nor would we feel called upon to hold the original act unconstitutional for the reasons assigned, in view of the well-established rule that a legislative act should be held to be constitutional until it is shown beyond a reasonable doubt that it is not so, and that a law should not be held to be void for repugnancy to the constitution in a doubtful case.

[7] It is contended by appellant that the act of 1925 was adopted subsequent to the execution of the mortgages held by appellant, and that said act purports to authorize a lien prior to and superior to his mortgages, under which he claims a lien on the lands covered thereby and to the water stock and water rights, and that therefore his contracts are impaired, which being true, the act of 1925 is repugnant to and in violation of the United States constitution, art. 1, sec. 10, and of the Idaho constitution, art. 1, sec. 16. We are not inclined to agree with this contention. Appellant's contracts remain the same; his indebtedness is not terminated or lessened in any amount; neither is he denied the right to enforce his contracts. At most, his security might be lessened, in that upon foreclosure and sale his security might or might not discharge the obligations. The lands covered by the mortgages are within the tract to be furnished with additional water, and the value thereof may be materially increased. His injury, therefore, is purely speculative, and not having been injured, why complain. When appellant accepted the mortgages, he knew, or should have known, and since he is a stockholder in the Salmon River Canal Company, he must have known that the articles of incorporation provided that the directors might do all things necessary to supply sufficient water to properly irrigate the land within the segregation, and that in order to do so they might borrow money by mortgaging all the property of the corporation, levy assessments, collect tolls, in order to discharge the corporate indebtedness, and he accepted his mortgages, therefore, subject to whatever legal rights the corporation had under statutes then in force or that might thereafter be created by statute.

"Any enactment of a legislative character is said to 'impair' the obligation of a contract which attempts to take from a party a right to which he is entitled by its terms, or which deprives him of the means of enforcing such a right." (12 C. J., p. 1056, sec. 699.)

[8]   The general rule would seem to be that a statute which does not act on the contract itself but merely on the property which is the subject of the contract may not be said to impair the obligation of the contract. (12 C. J., *supra.*) The value of the contract may be diminished, but the obligation of the parties to each other is not affected in the slightest degree, as was said in *State v. Pullman Co.*, 75 Kan. 664, 90 Pac. 319, 321. "Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation." (*Curtis v. Whitney*, 13 Wall. (U. S.) 68, 70, 20 L. ed. 513.) The right to enforce appellant's contracts remains undisturbed, and their validity is not impaired.

[9]   The third point urged by appellant is that the proposed assessments on the capital stock of respondent company are in violation of C. S., chap. 186, art. 6, relating to assessments on capital stock, and particularly secs. 4733–4736. Under this point appellant contends that, under our constitution, all private corporations are incorporated under the general laws, and that, accordingly, the articles of incorporation cannot broaden the power of a corporation to levy assessments beyond that given by the statute under which the corporation is created. In support of this contention appellant relies upon the statement contained in the opinion of this court in *Seyberth v. American Com. etc. Co., Ltd.*, 42 Ida. 254, 264, 245 Pac. 392, as follows:

"The levy and collection of assessments are statutory, and in this state the authority conferred upon the directors of a corporation to levy and collect assessments upon the subscribed capital stock for the purpose of paying obligations, conducting business, or paying debts, is provided for by C. S., sec. 4733."

C. S., sec. 4733, provides:

"The directors of any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying

expenses, conducting business or paying debts, levy and collect assessments upon the subscribed capital stock thereof in the manner and form, and to the extent, herein provided."

Thus, appellant argues, the power to levy and collect assessments on capital stock is limited to the manner and form, and to the extent, as in the remaining or following sections of C. S., chap. 186, art. 6, provided.

C. S., secs. 4734, 4735 and 4736 provide, in substance, that (4734) no one assessment must exceed ten per cent of the amount of the capital stock named in the articles of incorporation; (4735) no assessment must be levied while any portion of a previous one remains unpaid; and (4736) the order levying an assessment must specify the amount thereof, when, to whom and where payable, fix the day subsequent to the full term of publication of the assessment notice on which the unpaid assessment will be delinquent, and a day for the sale of delinquent stock.

It is insisted by appellant that the resolution authorizing or levying the assessment, or assessments, herein shows a complete disregard of all these statutory requirements, in that:

A. (4734)   No attention is paid to the ten per cent limitation;

B. (4735)   Semi-annual assessments are levied over a twenty-year period without any reference to whether or not previous assessments have been paid; and

C. (4736)   While a date for payment of each assessment is fixed, no provision is made as to date of delinquency, date for sale of the stock delinquent, or for the place at which, or the person to whom the assessments are payable.

It was anticipated by appellant that respondent might urge that its articles of incorporation and by-laws enlarge the powers conferred by statute in connection with the levying of assessments, and he maintains that neither its articles nor by-laws purport to enlarge such powers,—citing the following portions of the articles of incorporation and by-laws of respondent to show that it has limited itself in the

matter to the provisions of the statutes relating to assessments:

(Articles of Incorporation, sec. 2): "That the purposes for which it is formed are: . . . . To fix, charge and collect from its stockholders, tolls, rentals, assessments and maintenance charges based upon the number of shares of stock held by each person or proportioned to the amount of water used or owned, or by both said methods *or by assessment upon the capital stock levied in accordance with the laws of Idaho or such other method as may be prescribed in the by-laws of said corporation.*"

(By-Laws, sec. 13.): "Assessments shall be made upon the capital stock of the corporation appurtenant to patented lands within the irrigation system *in accordance with the laws of the State of Idaho.*"

(The italicization in the two quoted sections is supplied by appellant to emphasize his point that respondent has not attempted to enlarge its statutory power relating to assessments on its capital stock, in that the articles of incorporation and by-laws themselves expressly limit any assessments to the manner and extent provided by statute.)

Respondent endeavors to answer the contention that the proposed levies are illegal and void under C. S., secs. 4733–4736, by arguing, in effect: That the language as used in the articles of incorporation cannot be construed as a limitation upon the *amount* of an assessment that may be made upon the capital stock, and that that portion of sec. 2 of the articles of incorporation set out above, providing for assessments upon the capital stock "levied in accordance with the laws of Idaho," indicates that the incorporators had in mind the *method* by which the levy may be made, and not the *amount* of the levy. But aside from this, respondent contends, assessments upon the capital stock "levied in accordance with the laws of Idaho" are not confined to C. S., secs. 4733–4736, but may be made under C. S., sec. 3040, as amended by Sess. Laws 1925, chap. 107, pp. 153, 154, which provides, in part:

"Any corporation heretofore organized or any corporation that shall hereafter be organized for the operation, control or management of an irrigation project or canal system, or for the purpose of furnishing water to its shareholders, and not for profit or hire, the control of which is actually vested in those entitled to the use of the water from such irrigation works for the irrigation of the lands to which the water from such irrigation works is appurtenant, . . . . shall have the right to levy and collect from the holders or owners of all land to which the water and water rights belonging to or diverted by said irrigation works are dedicated or appurtenant . . . . and also from the holders or owners of all other land who have contracted with such company, corporation or association of persons to furnish water on such lands, . . . . *reasonable tolls, assessments and charges* for the purpose of maintaining and operating such irrigation works and conducting the business of such company, corporation or association and meeting the obligations thereof . . . . "

And, respondent urges, the stockholders of the corporation themselves have adopted the same interpretation as to the amounts of assessments, as contained in the statute quoted from above, by providing in their by-laws (sec. 9) that:

" . . . . this corporation may make such *reasonable* assessments for the business purposes of the organization as may be necessary either by way of maintenance charges or by assessments upon the capital stock of the corporation . . . . "

It is also suggested by respondent that the construction which it places on its authority to levy assessments is not contrary to the rule announced in *Seyberth v. American Com. etc. Co., Ltd., supra,* for the reason that in that case the court was dealing with the broad principle of the authority of directors to levy and collect assessments, and that the question of whether or not the directors were authorized to levy an assessment by the articles of incorporation was not involved, nor was the court considering the amount of

an assessment that may be levied by an irrigation corporation not organized for profit.

In support of its position on this point, respondent cites the following cases: *Nelson v. Keith O'Brien Co.*, 32 Utah, 396, 91 Pac. 30; *Huxtable v. Berg*, 98 Wash. 616, 168 Pac. 186; *Forsyth v. Selma Mines Co.*, 58 Utah, 142, 197 Pac. 586.

The first two cases cited hold to the same effect as the Idaho case of *Wall v. Basin Min. Co., Ltd.*, 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, that authority to make an assessment on capital stock fully paid must be found in either the constitution or statutes of the state, or the provisions of the articles of incorporation of the company. The other case, *Forsyth v. Selma Mines Co.*, reaffirms this rule, and is perhaps more nearly in point on the entire proposition than the others.

In the last cited case it was contended that an assessment levied on the outstanding stock of a mining corporation was in excess of the amount authorized by law, and therefore null and void, the assessment amounting to more than ten per cent of the outstanding capital stock of the corporation, in violation of sec. 902, Compiled Laws of Utah, 1917. The court stated in the opinion that the articles of incorporation of the mining company expressly provided that the particular kind or class of stock in question "shall be assessable," and that the assessments "shall be levied by the board of directors and shall be made payable in the manner and form as provided for by said board." It was observed that the parties seeking to have the assessment declared invalid, very strenuously argued and contended that the only interpretation to be placed upon the language employed in the articles of incorporation, as above referred to, was that the common stock might be assessed only within the limitations prescribed by the statutes, and the court answered as follows:

" . . . . It would seem that a more logical construction would be that the incorporators must have contemplated by the expression used that the common stock should be assessable without limitation, for the purpose and the amount

necessary to carry on the corporate business in general, and more especially to develop, save, and protect its mining claims and other property, thereby subserving the best interest of the company and its stockholders in the only way possible. . . . . So long as the incorporators themselves saw fit to agree and expressly provide by their articles of incorporation that stock should be assessable without prescribing any limitation as to the amount, this court is impelled to hold in accord with the theory advanced by the defendants that it was fully intended by the incorporators that the board of directors of the company should be invested with the power to assess without limitation for any amount that might be necessary to meet the exigencies of the corporate business and protect the interests of the corporation and its stockholders.''

The court then passed from the consideration of the articles of incorporaation to the provisions of the Utah statutes bearing on the question involved, and stated that even though it be conceded that the articles of incorporation left the amount of the levy to be as provided by statute, the position of the parties attacking the assessment could not be sustained under the statutes. The sections of the Utah statutes dealing with assessments on the capital stock of corporations were then set forth (secs. 879, 900, 901, 902, 903), and the conclusion was reached that the section limiting assessments to ten per cent of the outstanding capital stock had wholly to do with calls or assessments on *unpaid* subscriptions, and that under sec. 900, providing that:

''The full paid capital stock of any corporation . . . . shall not be assessable for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation . . . . ''

—together with the declaration in the articles of incorporation of the mining company that stock ''shall be assessable'' without fixing the amount or prescribing any limit, the incorporators must have had in mind and fully intended that the stock should be assessable to the extent and for the amount found necessary to enable the corporation to do

business along business lines, at least to such an extent as
would enable the company to carry out the purposes of
its organization and save and preserve the property of the
company and its stockholders and to pay and meet just
debts and obligations.

Appellant contends that this decision of the Utah court
cannot be considered as authority here, for the reason that
the statutes of Utah and Idaho on the subject of assessments
are open to different constructions, the difference being in
the particular sections of the statutes of the two states
limiting assessments to ten per cent of the outstanding capi-
tal stock. The Utah court construed its section (902) con-
taining the limitation of ten per cent as relating only to
calls or assessments on *unpaid* subscriptions, and appellant
urges that the Idaho statute (C. S., sec. 4734) containing
the ten per cent limitation is intended to be a check on the
amount of any assessment on capital stock which is *paid up*.
Appellant calls attention to the first exception under the
Idaho statute, providing that an assessment may exceed ten
per cent "if the whole capital of a corporation has not been
paid up," etc., and says, "if the section only relates to calls,
this exception would be wholly unnecessary and meaning-
less."

There does seem to be some difference in the statutes of
Utah and Idaho on this subject. Section 900 of the Utah
Compiled Laws authorizes assessments on *full paid* stock
"to such extent and in such manner as may be expressly
provided in the articles of incorporation." Section 901 pro-
vides for the levy and collection of assessments upon the
*unpaid* capital stock "in such a *manner* and at such *times*,
as may be prescribed in the articles of incorporation, or,
if not therein provided for, *in the manner and form and to
the extent* hereinafter prescribed." Section 902 follows
with the provision that "no assessment shall exceed ten per
cent. of the outstanding capital stock of the corporation,"
etc. It must be remembered (first) that sec. 900 of the
Utah laws provides for assessments on *full paid* capital
stock, and authorizes their levy to such *extent* and in such

manner as may be expressly provided in the articles of incorporation, thus, apparently, not attempting to prescribe any limitation as to the *amount* of any assessment on *full paid* capital stock; (second) that section 901 of the Utah laws deals with *unpaid or not fully paid* capital stock, and authorizes assessments thereon in such a *manner* and at such *times* as may be prescribed in the articles of incorporation, or, if not therein provided for, in the manner and form *and to the extent* "hereinafter prescribed." And with sec. 902 (directly following section 901, so as to be within the terms of the words "hereinafter prescribed" as used in sec. 901) limiting any assessment to ten per cent of the outstanding capital stock, the conclusion would appear to be inevitable that the ten per cent limitation refers only to assessments on stock *not* full paid. Such conclusion is strengthened by the holding of the Utah supreme court in the case under consideration, and by the headings and substance of the pertinent Utah sections. Section 900 is headed, "Full-paid stock non-assessable," the body of the section authorizing such assessments "to such extent and in such manner" as may be expressly provided in the articles of incorporation, evidencing an intent not to control the amount of any assessment on full paid capital stock when provided for in the articles of incorporation. Section 901 is headed, "Assessment of stock not full paid," the body of the section authorizing assessments upon *unpaid* capital stock in manner and at such times as may be prescribed in the articles of incorporation, or, if not therein provided for, in the manner and form and *to the extent* "hereinafter prescribed," here evidencing an intention to limit assessments on *unpaid* stock to the amount fixed by section 902, immediately following, or ten per cent.

Now, with reference to the Idaho statutes on the subject: C. S., sec. 4733, provides that assessments may be levied and collected, after one-fourth of the capital stock of any corporation formed or existing under the laws of this state has been subscribed, upon the subscribed capital stock thereof, "in the manner and form, *and to the extent,* herein

provided.'' This section appears to authorize assessments upon both *paid* and *unpaid* capital stock, but in the manner and form, *and to the extent,* as in the sections following provided. Then comes C. S., sec. 4734, with the provision that no one assessment must exceed ten per cent of the amount of the capital stock named in the articles of incorporation, and, keeping in mind that C. S., sec. 4733, authorizes assessments on capital stock without regard to whether it be full paid or unpaid, but ''to the extent'' as in the sections following provided, the logical inference would appear to be that the ten per cent limitation on assessments contained in the next section, C. S., sec. 4734, applies to full paid capital stock as well as to capital stock not fully paid, and such a deduction becomes more apparent when considering the first exception to the ten per cent limitation, under C. S., sec. 4734, viz., the allowance of assessments for the full amount of *unpaid* stock, when the corporation is unable to meet its liabilities or to satisfy the claims of creditors, or for any less amount (which might be above ten per cent) sufficient to meet the liabilities of the corporation.

Another more or less important distinction to be considered in connection with the application of the decision of the Utah supreme court in *Forsyth v. Selma Mines Co., supra,* to the Idaho statutes and the case at bar, is that we do not have on the subject of assessments a section of the statutes similar to sec. 900 of the Compiled Laws of Utah, authorizing assessments on the capital stock of corporations, full paid, to such extent and in such manner and form *as may be expressly provided in the articles of incorporation.*

[10] Respondent argues, indirectly, that it may not be bound by the statutes, C. S., secs. 4733–4736, as to the amount of assessments, and cites the case of *Wall v. Basin Mining Co.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, as holding that the authority to make an assessment upon capital stock fully paid up must be found either in the statutes or constitution of this state, or the provisions of the articles of incorporation. Such a holding is recog-

nized as the settled law in this country, as stated in *Forsyth v. Selma Mines Co., supra,* but it is to be noted that it goes to the authority of *making* an assessment, and not to the amount of any particular assessment. In other words, the mere authorization for assessments contained in the articles of incorporation of a company would not, under the rule stated in *Wall v. Basin Mining Co., Ltd., supra,* empower the corporation to levy an assessment in any amount it deemed advisable, if a limitation upon the amount of an assessment upon the capital stock of a corporation is contained in the statutes, and the statutes are controlling. If the statutes were not intended to be controlling in the matter, for what purpose were they enacted and re-enacted, and why do they still remain a part of the written law of the state? The compiled statutes establish the law of this state respecting the subjects to which they relate. (C. S., sec. 9444.)

The statutes of California on the subject of assessments on the capital stock of corporations are similar to those of Idaho, and in the case of *Santa Cruz Co. v. Spreckles,* 65 Cal. 193, 3 Pac. 661, the California supreme court had occasion to construe them. In passing, the court cited the case of *Sullivan v. Triunfo Min. Co.,* 39 Cal. 465, as holding, under an earlier act but which contained a limitation upon assessments, that the statute was, as it purported to be, applicable to all corporations formed under the general laws of the state. Farther on in the opinion in the Spreckles case it was stated that, in enacting the sections of the California code in question, the legislature not only did, but clearly intended to, authorize, for the purposes *and subject to the limitations prescribed,* assessments upon stock fully paid for, as well as assessments for the amount unpaid thereon.

A holding and statement as to the necessity for adherence to the statutory limitation on assessments on capital stock are also found in *Pacific Fruit Co. v. Coon,* 107 Cal. 447, 40 Pac. 542, and 6 Cal. Jur., p. 956.

As to respondent's contention that assessments upon capital stock, levied in accordance with the laws of Idaho, are not confined to C. S., secs. 4733–4736, but may be made under C. S., sec. 3040, as amended by Sess. Laws 1925, chap. 107, pp. 153, 154, authorizing the levy and collection of *reasonable* tolls, assessments and charges by any corporation organized for the operation, control or management of an irrigation project, etc., it may be suggested that the ten per cent limitation would still maintain, in that an assessment not exceeding ten per cent might be reasonable, and one beyond that unreasonable; or, that the definite limitation as to the amount of an assessment, as fixed in C. S., sec. 4734, would govern over an indefinite limitation. We are of the opinion, however, that respondent company must be amenable to the provisions of C. S., chap. 186, art. 6, in the matter of the levy and collection of assessments upon its capital stock.

Appellant points out that if the levy for the entire amount of the bond issue herein be considered as a single assessment, the aggregate amount thereof, $1,147,750, is six times more than the total capital stock of respondent company. In the order levying the assessment it is termed a "continuing direct annual assessment," collectible semi-annually over a period of twenty years. On the other hand, appellant says, if it be considered a series of assessments over a twenty-year period, every assessment, with one exception, is in excess of ten per cent of the capital stock named in the articles of incorporation of respondent company; and, since all are levied at the same time and by the same resolution, all, therefore, with the exception of the first, are in direct violation of C. S., sec. 4735, which prohibits an assessment on capital stock while any portion of a previous assessment remains unpaid. The only answer respondent attempts to make on this point is that "if it shall be determined that resolutions should be adopted from time to time, or from year to year, embracing the assessments as herein levied to comply with the letter of the law this may be done."

It is also contended by appellant that the proposed assessments are void for nonconformance to the requirements of C. S., sec. 4736, in that no provision is made as to date of delinquency of unpaid assessments, date for sale of delinquent stock, or the place at which, or the person to whom, the assessments are payable.

The order levying the "continuing direct annual assessment" on the capital stock of respondent company is subject to the objections urged against it by appellant, as being in violation of the provisions of C. S., chap. 186, art. 6, secs. 4733–4736, and it follows, therefore, that the trial court erred in refusing to issue the injunction as prayed for by appellant.   The judgment is reversed.   Costs to appellant.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

TAYLOR, J., Concurring in Part.—I concur in the decision as to the "third point" only: that the assessments proposed are in violation of statute.

(January 25, 1928.)

### ON PETITION FOR REHEARING.

BUDGE, J.—Respondent has filed a petition for rehearing in this case.

We adhere to the position heretofore taken as to the construction placed upon C. S., secs. 4733–4736, concerning assessments levied upon the capital stock of a corporation. These sections, authorizing assessments on corporate stock within certain prescribed limitations, are not in conflict with C. S., sec. 3040, as amended by Sess. Laws 1925, chap. 107, pp. 153, 154, providing for the right to levy reasonable tolls, assessments and charges.   The latter statute is a part of C. S., chap. 138, and relates to an entirely different procedure for raising revenue for the purpose of maintaining and operating irrigation works and meeting the obligations of an irrigation company.

[11]  If assessments are levied on the capital stock, the amount and manner of the levies are governed by C. S., secs. 4733–4736, inclusive; and if assessments are levied under C. S., sec. 3040, as amended, *supra,* then the levies may be for a reasonable amount, based upon the number of shares or water rights held by each person or proportioned to the amount of water used or owned, or by both of said methods, for the purposes stated in said section, but the procedure to be followed thereunder must be in compliance with the provisions of C. S., chap. 138, art. 1, as amended, of which C. S., sec. 3040, is a part.

Wm. E. Lee, C. J., and Givens, Taylor and T. Bailey Lee, JJ., concur.

Petition for rehearing denied.

---

(No. 4740.  November 30, 1927.)

## PACIFIC STATES AUTOMOTIVE FINANCE CORPORATION, a Corporation, Respondent, v. W. K. ADDISON, Appellant.

[261 Pac. 683.]

SALES—FRAUD—PROMISSORY STATEMENTS—BUSINESS NAMES—FOREIGN COMPANY—"DOING BUSINESS WITHIN STATE"—BILLS AND NOTES—HOLDER IN DUE COURSE.

1.  Fraud in inception of sale contract for washing-machines for which trade acceptances were given *held* not shown, notwithstanding evidence that seller's agent made oral promises concerning delivery of merchandise and methods to be employed in its sale, where sale contract expressly provided that no representation, agreement or covenant outside of those contained therein would be recognized, and first words of instrument were, "read before signing."

2.  Where neither contract for sale of washing-machines nor trade acceptances given therefor at time of sale were completed within the state of Idaho and transaction was purely interstate, failure to file, under Laws 1921, chap. 212, certificate on part of seller company having fictitious name and under which it

did business did not render transaction as to trade acceptances *prima facie* fraudulent.

3. In action by indorsee on trade acceptances, facts *held* not to show that title of indorser to instruments under C. S., sec. 5922, was defective so as to remove presumption, under sec. 5926, attaching in favor of indorsee, that every holder is deemed *prima · facie* to be holder in due course.

4. Where consideration paid by indorsee of trade acceptances was more than nominal, fact that it acquired the instrument at an excessive rate of discount *held* not to make its good faith a question for jury, where there was nothing in transaction surrounding purchase of instruments by indorsee to charge it with bad faith.

5. Holder of negotiable instruments is not bound at his peril to be on the alert for circumstances exciting suspicions of wary vigilance, nor does he owe to party putting paper afloat the duty of active inquiry in order to avoid imputation of bad faith.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Action to recover on trade acceptances. Judgment for plaintiff. *Affirmed.*

Publisher's Note.

1. Future promise as fraud, see notes in 10 L. R. A., N. S., 640; 24 L. R. A., N. S., 735. See, also, 12 R. C. L. 254.

2. Validity of contracts as affected by failure to comply with condition of right to do business under assumed or fictitious name or designation not showing names of persons interested, see note in 45 A. L. R. 207.

3. Presumption in favor of holder of commercial paper, see note in 17 L. R. A. 326. See, also, 3 R. C. L. 1032.

4. Payment of less than value by transferee as affecting *bona fides,* see note in 17 Ann. Cas. 386. See, also, 3 R. C. L. 1055.

5. See 3 R. C. L. 1074.

See Agency, 2 C. J., sec. 541, p. 857, n. 71.

Bills and Notes, 8 C. J., sec. 709, p. 499, n. 8; sec. 717, p. 508, n. 71; sec. 1289, p. 980, n. 21.

Commerce, 12 C. J., sec. 26, p. 28, n. 12.

Fraud, 26 C. J., sec. 25, p. 1087, n. 43.

Names, 29 Cyc., p. 270, n. 43.

Sales, 35 Cyc., p. 84, n. 13.

Johnson & Nixon, for Appellant.

The title of Alexander or Cascade Products Company to the instruments was defective. (C. S., sec. 5922; *Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 328–331, 27 A. L. R. 337, 206 Pac. 175; *Wright v. Spencer,* 39 Ida. 60, 62–67, 226 Pac. 173; *Shellenberger v. Nourse,* 20 Ida. 323, 329, 333, 334, 118 Pac. 508; *German-American Bank v. Cunningham,* 97 App. Div. 244, 89 N. Y. Supp. 836; *First National Bank v. Campbell,* 39 Ida. 736, 741, 230 Pac. 43; Laws 1921, chap. 212, p. 424.)

The burden of proof was upon respondent to show that it took without notice. (C. S., sec. 2926; *First National Bank v. Pond,* 39 Ida. 770, 775, 230 Pac. 344.)

There was ample evidence in the record to impeach and contradict the testimony of Mr. Lyen, sole witness for respondent, and from which the jury might reasonably have drawn the inference that the respondent was not a holder in due course and consequently respondent did not sustain the burden of proof and it was error for the court to take the case from the jury. (*First Nat. Bank v. Pond,* 39 Ida. 770, 775–776, 230 Pac. 344, and cases cited; *Winter v. Nobs,* 19 Ida. 18, 27–29, Ann. Cas. 1912C, 302, 112 Pac. 525; *Park v. Johnson,* 20 Ida. 548, 553–555, 119 Pac. 52; *Park v. Brandt,* 20 Ida. 660, 119 Pac. 877; *Vaughan v. Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816.)

The court would not permit Lyen, on cross-examination, to testify about his acquaintance and dealings with Domestic Products Company, which was the name under which Alexander conducted business from February, 1924, when Cascade Products Company went out of business, and this ruling is assigned as error because of an agreement in writing between respondent and Alexander doing business as Domestic Products Company, which agreement is referred to in the answer and which provided that action upon these trade acceptances be deferred for a certain time, or until receipt of the goods, and which contract was alleged in the answer to contain statements showing that when respondent took

over the trade acceptances it had full knowledge of the terms and conditions of the contract under which the washing-machines were sold to Addison.

This original contract was shown by the evidence to be in the possession of plaintiff and it was given reasonable notice in the answer to produce it. The plaintiff failed to produce it or to account for its absence. Under these circumstances secondary evidence of its contents was admissible (C. S., sec. 7970, subd. 2).

Gustave Kroeger and Harry Keyser, for Respondent.

No fraud shown in the inception of the contract.

(a) Principal not bound by representations of agent going beyond the terms of the contract.

(b) For the same reason there was no agreement not to transfer the trade acceptances.

Principal not bound by representations of agent where contract provides that no agreement save those in the contract would be recognized. (2 C. J. 857; *Bruner v. Kansas Moline Plow Co.,* 7 Ind. Ter. 506, 104 S. W. 816; *Blackstad Merc. Co. v. J. W. Porter & Co.* (Tex. Civ. App.), 158 S. W. 216; *Steiner Mfg. Co. v. Kochaniewicz* (N. J.), 128 Atl. 608; *Colonial Development Corp. v. Bragdon,* 219 Mass. 170, 106 N. E. 633; *Schuster v. North American Hotel Co.,* 106 Neb. 672, 184 N. W. 136, 186 N. W. 87; *Kasch v. Williams* (Tex. Civ. App.), 251 S. W. 816; *Southern Fertilizer Co. v. Harrell,* 17 Ga. App. 642, 87 S. E. 911; *Locomobile Co. of America v. Belasco,* 32 Cal. App. 329, 162 Pac. 920; *American Emigrant Co. v. Clark,* 47 Iowa, 671.)

Statutes requiring firms doing business under fictitious names to file certificates have no application, as transaction was wholly interstate. (*D. M. Ferry & Co. v. Smith,* 36 Ida. 67, 209 Pac. 1066; *General Motors Acceptance Corp. v. Lund,* 60 Utah, 247, 208 Pac. 502; *Dunn-Salmon Co. v. Edwards,* 60 Pa. Sup. Ct. 340.)

Mere suspicious circumstances will not charge the purchaser with bad faith and notice of alleged defenses; there must be actual notice either of the facts constituting the

defense or of such facts and circumstances that the purchase of the paper in the face of such knowledge amounts to bad faith. (*First Nat. Bank v. Pond,* 39 Ida. 770, 230 Pac. 344; *Butte Machinery Co. v. Jeppesen,* 41 Ida. 642, 241 Pac. 36; *Whittlesey v. Drake,* 43 Ida. 623, 253 Pac. 621.)

In the absence of evidence showing that plaintiff in an action on a note did not take the note in due course or showing notice of facts constituting equities or defenses or such circumstances that act in taking note amounted to bad faith, plaintiff was entitled to directed verdict. (*Butte Machinery Co. v. Jeppesen; Whittlesey v. Drake, supra.*)

The early and present doctrine is that the right of a *bona fide* holder for value in the usual course of business of negotiable paper cannot be defeated by proof that he was negligent and omitted to make inquiries which common prudence would have dictated. (*Richardson v. Monroe,* 85 Iowa, 359, 39 Am. St. 301, 52 N. W. 339; *Lake v. Reed,* 29 Iowa, 258, 4 Am. Rep. 209; *Lane v. Evans,* 49 Iowa, 156; *Pond v. Waterloo Agricultural Works,* 50 Iowa, 596.)

To charge the holder of a negotiable promissory note with notice of infirmities, he must have been guilty of something more than mere negligence in taking the note. Indeed, gross negligence, it is said, is not sufficient, and nothing but fraud is sufficient to destroy the character of the holder as one who acted in good faith. (*Cook v. Weirman,* 51 Iowa, 561, 2 N. W. 386.)

BUDGE, J.—This action was brought by respondent, as indorsee, upon three certain trade acceptances given by appellant in payment of and for the purchase of a number of dish-washers and washing-machines. Contemporaneously with the execution and delivery of trade acceptances, on November 28, 1923, a written contract of sale was entered into between appellant, as buyer, and the Cascade Products Company, as seller, covering the terms of their agreement for the purchase and sale of the machines mentioned. The contract called for the shipment of the articles named at

"earliest convenience," and contained the following stipulation:

"The Buyer hereby acknowledges the purchase of the above merchandise in good faith and that this order cannot be countermanded, and that all representations, agreements and covenants between said Seller and Buyer are set forth herein and none other are valid, binding or recognized."

The cause was tried to the court and a jury, and after the introduction of evidence by both sides, the court directed a verdict for respondent for the full amounts of the three trade acceptances, together with interest and attorney fees. This appeal is from the judgment entered on the verdict.

[1] Specifications of error made and relied upon by appellant are predicated upon the action of the court in directing the jury to return a verdict for respondent, and in striking out and sustaining respondent's objections to certain evidence offered by appellant.

The dealings had with appellant by which the contract for the sale of the machines was executed and the trade acceptances procured were through an agent of the Cascade Products Company, one Johnson. It is claimed by appellant that the agent made certain false and fraudulent representations concerning transfer of the trade acceptances and the purposes for which they were desired, as a means of obtaining appellant's signature thereto, as showing that the title of the Cascade Products Company to the instruments was defective. The giving of the trade acceptances was an incident of the execution of the contract, and there is no sufficient showing of fraud in the inception of the contract. It appears from the evidence that the statements made by the agent concerning delivery of the merchandise and methods to be employed in its sale, were contained in the contract itself. If any other, or oral, statements or promises were made to appellant by the seller's agent, and not with reference to the subject matter, the principal would not be bound thereon, because of the express provision in the contract that no representation, agreement or

covenant outside of those contained therein would be recognized. (2 C. J. 857; *Bruner v. Kansas Moline Plow Co.,* 7 Ind. Ter. 506, 104 S. W. 816; *Schuster v. North American Hotel Co.,* 106 Neb. 672, 184 N. W. 136, 186 N. W. 87; *Locomobile Co. of America v. Belasco,* 32 Cal. App. 329, 162 Pac. 920; *Colonial Development Corp. v. Bragdon,* 219 Mass. 170, 106 N. E. 633; *Steiner Mfg. Co. v. Kochaniewicz* (N. J.), 128 Atl. 608; *Blackstad Mercantile Co. v. J. W. Porter & Co.* (Tex. Civ. App.), 158 S. W. 216.)

"The general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time . . . . " 12 R. C. L., p. 254, sec. 21.

It must be conceded that the written contract was intended to embody and did contain the final terms of the agreement between appellant and the Cascade Products Company; and appellant thereby had actual notice of the agent's want of authority to make any statements or promises extrinsic thereto. It is not here advanced by appellant that he was induced by fraud or deceit not to read the contract, or that he did not read it in fact. The first words contained in the instrument were: "NOTE: READ BEFORE SIGNING."

[2] It is contended by appellant that, under the provisions of Sess. Laws 1921, chap. 212, pp. 424, 425, requiring the filing of a certificate in the office of the county recorder of the county in which business is carried on, conducted or transacted under any designation, name or style, partnership, or otherwise (except corporations), other than the true and real name or names of the person or persons conducting or transacting such business or having an interest therein, the failure to file such a certificate for the Cascade Products Company in Ada county rendered the transaction relating to the execution and delivery of the trade acceptances *prima facie* fraudulent. It is not disputed that "Cascade Products Company" was a fictitious name, so far as the statute is concerned, and that the person operating it

during the period involved was one W. L. Alexander, who was not, during any of the time, within the state of Idaho. Whether the Cascade Products Company was required to be amenable to this statute depends upon a determination of whether the transaction had with appellant over which this controversy arose comes within the terms "carry on, conduct or transact business in this state," enunciated in the statute. The statute does not appear to have been construed by any decision of this court, but there are numerous cases in this state and others touching similar statutes from the standpoint of foreign corporations complying with the laws relative to filing copies of their articles of incorporation, etc., as a prerequisite of doing business within the state to which the corporations are foreign, and what does or does not constitute doing business by them. Such a question was before this court in the recent case of *Portland Cattle Loan Co. v. Hansen Livestock & F. Co.,* 43 Ida. 343, 251 Pac. 1051, and it was there held that the taking of applications for loans by an agent of a foreign corporation who forwarded the same to the home office of such foreign corporation, there to be approved or disapproved; and the securing of a note and mortgage, executed within the foreign state but made payable to the foreign corporation at its home office, would not constitute doing business, so as to be offensive to the statutes above referred to. After citing a number of authorities on the proposition, this observation was made in the opinion:

"From our investigation of the authorities upon the question of when a foreign corporation is doing business within a state it is apparent that each case must be decided upon the particular facts and circumstances entering into the transaction. The authorities upon the question are irreconcilable."

See, also, *Burlington Sav. Bank v. Grayson,* 43 Ida. 654, 254 Pac. 215.

In the instant case, the contract signed by appellant shows the Cascade Products Company to have been located at Seattle, Washington, and the order for the goods sold

necessary to be accepted by the company before any lia-
bility of the trade acceptances would accrue.   The trade ac-
ceptances themselves were completed outside of the state
by the signature of W. L. Alexander, for the Cascade Prod-
ucts Company, but, for the convenience of the parties,
payable through the Boise City National Bank.   Neither
the contract nor the trade acceptances having been com-
pleted within the state of Idaho, the transaction was purely
interstate, and we are constrained to hold, under these cir-
cumstances, that the failure to file a certificate, on the part
of the Cascade Products Company, under the provisions of
Sess. Laws 1921, chap. 212, *supra,* did not render the trans-
action relative to the execution and delivery of the trade
acceptances *prima facie* fraudulent.

[3]   We conclude that there was no showing that the
title of the Cascade Products Company to the instruments
was defective, under C. S., sec. 5922, or so as to remove the
presumption attaching in favor of respondent as indorsee
of the trade acceptances, that every holder is deemed *prima
facie* to be a holder in due course.   (C. S., sec. 5926.)

[4]   For the purpose of showing that respondent was not
a holder of the instruments in due course, appellant points
out that the evidence discloses that respondent acquired the
paper at an excessive rate of discount, and that other facts
and circumstances surrounding the transaction were suffi-
cient to have put respondent on inquiry before it purchased
the paper, and should have been submitted to the jury on
the question of respondent's good faith.   There is some
question as to whether the trade acceptances were discounted
for ten per cent or more.   The record discloses that there
was a discount of ten per cent and a ledger credit of
$118.20.   No explanation is made of the latter item.   But
the consideration paid by respondent was certainly more
than nominal, and unless other circumstances were shown
as imputing bad faith on the part of the purchaser, the
action of the trial court in directing a verdict for re-
spondent would not be unwarranted.   (8 C. J., p. 508, sec.

717; *McNamara v. Jose,* 28 Wash. 461, 68 Pac. 903; *First Nat. Bank v. Egbers,* 130 Wash. 221, 226 Pac. 492.)

It was shown that respondent previously had had many other satisfactory transactions with the Cascade Products Company in the purchase of its paper, involving a considerable amount of money; that it had been furnished a financial statement by the Cascade Products Company, and was advised by another concern, which had similar dealings with the Cascade Products Company, that its paper was a choice investment. It was represented to respondent that the trade acceptances held by the Cascade Products Company were executed in settlement for merchandise delivered. And if it be admitted that respondent had knowledge that the Cascade Products Company was in financial straits at the time of the purchase of these particular trade acceptances, and that it later came to respondent's attention that the merchandise for which they were given had not been delivered, yet there is nothing in the transaction surrounding the purchase of the paper by respondent to charge it with bad faith. [5] The holder of negotiable instruments is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance; he does not owe to the party who puts paper afloat the duty of active inquiry in order to avert the imputation of bad faith. (*Butte Machinery Co. v. Jeppesen,* 41 Ida. 642, 241 Pac. 36; *Whittlesey v. Drake,* 43 Ida. 623, 253 Pac. 621; *McNamara v. Jose, supra.*)

The trial court properly directed a verdict for respondent.

An extended consideration of specifications of error relating to the rejection of evidence offered by appellant would not change the result.

The judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Taylor and T. Bailey Lee, JJ., concur.

Givens, J., dissents.

(No. 4776.   November 30, 1927.)

## MAUD DAVENPORT, Respondent and Cross-Appellant, v. ALBERT BIRD and EFFIE BIRD, Appellants.

[261 Pac. 769.]

CONSTRUCTIVE TRUST—REPUDIATION—STATUTE OF LIMITATIONS AS TO CESTUI QUE TRUST—QUIETING TITLE.

1. Funds advanced husband by wife, with oral understanding and agreement that house erected therewith on property standing in his name should be her separate property during her life, and that on her death remainder in fee should become property of daughter, *held* to establish trust for daughter.

2. Execution of mortgage and attempt to convert premises into community property more than four years before commencement of action by *cestui que trust*, under voluntary continuing parol trust agreement, *held* not to set limitations running and so bar such action where acts of repudiation were not unequivocally brought home to *cestui que trust* until about year before commencement of action.

3. Statute of limitations does not begin to operate on right to bring action for repudiation of voluntary continuing parol trust agreement until such repudiation is unequivocally brought home to *cestui que trust*.

4. Where wife advanced sum to husband to erect house on property standing in his name, with voluntary continuing parol agreement that she should have life estate, remainder in fee to her daughter in house built, but husband repudiated trust by executing mortgage and conveying to community, daughter could quiet title to extent of sum advanced only, and was not entitled to decree covering entire property.

Publisher's Note.

1. Sufficiency of evidence to establish constructive trust, see note in Ann. Cas. 1916D, 1194. See, also, 26 R. C. L. 1251.

3. Limitation of actions between trustor and trustee, see notes in 99 Am. Dec. 389; 3 Ann. Cas. 200; 13 Ann. Cas. 1165; Ann. Cas. 1917C, 1018. See, also, 17 R. C. L. 710, 794.

See Limitations of Actions, 37 C. J., sec. 267, p. 903, n. 22; sec. 295, p. 925, n. 57.
Quieting Title, 32 Cyc., p. 1380, n. 88.
Trusts, 39 Cyc., p. 72, n. 97.

APPEAL from the District Court of the Seventh Judicial District, for Gem County. Hon. Ed. L. Bryan, Judge.

Action to quiet title to real estate. From judgment awarding plaintiff an undivided interest therein, both plaintiff and defendants appeal. *Affirmed.*

Frawley & Koelsch, for Appellants.

The facts do not establish a trust, either express or implied. (C. S., secs. 7974, 7975; annotation, 35 A. L. R. 281–283; *Sherman v. Sandell,* 106 Cal. 373, 39 Pac. 797; *Motherwell v. Taylor,* 2 Ida. (Hasb.) 254, 10 Pac. 304; *Bliss v. Bliss,* 20 Ida. 467, 119 Pac. 451.)

An implied trust requires no repudiation to set the statute of limitations into motion. (*Hecht* v. *Slaney,* 72 Cal. 363, 14 Pac. 88; *Benoist v. Benoist,* 178 Cal. 234, 172 Pac. 1109.)

The basis of a constructive trust is fraud, either actual or constructive, and the mere violation of a parol contract is not fraud. (*Brison v. Brison,* 75 Cal. 525, 7 Am. St. 189, 17 Pac. 689, 90 Cal. 323, 27 Pac. 186; *Cooney v. Glynn,* 157 Cal. 583, 108 Pac. 506; *Cassels v. Finn,* 122 Ga. 33, 106 Am. St. 91, 2 Ann. Cas. 554, 49 S. E. 749, 68 L. R. A. 80; 28 Am. & Eng. Ency. L. (2d) 883; *Feeney v. Howard,* 79 Cal. 525, 12 Am. St. 162, 21 Pac. 984, 4 L. R. A. 826; *Babcock v. Chase,* 111 Cal. 351, 43 Pac. 1105; *Sheehan v. Sullivan,* 126 Cal. 189, 58 Pac. 543.)

The facts found by the trial court do not constitute fraud, either actual or constructive, and hence do not constitute a constructive trust, but do constitute an express trust which is void under the statute. (*Brown v. Kausche,* 98 Wash. 470, 167 Pac. 1075; *Dolan v. Weir,* 134 Wash. 560, 236 Pac. 285; *Feeney v. Howard,* 79 Cal. 525, 12 Am. St. 162, 21 Pac. 984, 4 L. R. A. 826; *Smith v. Mason,* 122 Cal. 426, 55 Pac. 143.)

Acts by the trustee in violation of his trust constitute a repudiation of the trust and set the statute of limitations

into motion.   (*Cooney v. Glynn, supra; Sheehan v. Sullivan, supra.*)

J. P. Pope and J. P. Reed, for Respondent.

A constructive trust, arising by operation of law, may arise from the relationship of the parties as revealed by oral understanding to enforce their presumed intent or to rectify fraud or to prevent unjust enrichment.   (*Cooney v. Glynn,* 157 Cal. 583, 108 Pac. 506; *Taylor v. Bunnell,* 77 Cal. App. 525, 247 Pac. 240; *Brison v. Brison,* 90 Cal. 323, 27 Pac. 186; *Fox v. Fox,* 77 Neb. 601, 110 N. W. 304.)

Where the promisor and promisee occupy a confidential relation, such as husband and wife, the repudiation of an oral promise will give rise to a constructive trust, although there be no actual fraud.   (Bogart on Trusts, pp. 128–130; *Stahl v. Stahl,* 214 Ill. 131, 105 Am. St. 101, 73 N. E. 319, 68 L. R. A. 617; *Bradley Co. v. Bradley,* 165 Cal. 237, 131 Pac. 750.)

The statute of limitations does not commence to run against a trust arising by operation of law until it is repudiated by the trustee.   (*Cooney v. Glynn* (Cal.), *supra; Cohn v. Goodday,* 191 Cal. 615, 217 Pac. 757; *Lamb v. Lamb,* 171 Cal. 577, 153 Pac. 913.)

The statute of limitations does not begin to run as long as there is a continuing equitable trust recognized and acknowledged by the parties.   (17 R. C. L. 795; *Cooney v. Glynn, supra; Butler v. Hyland,* 89 Cal. 575, 26 Pac. 1108.)

BUDGE, J.—In this action, which was brought to quiet title to certain property in the city of Emmett, judgment went in favor of the plaintiff.   From the judgment, both parties to the action have appealed.

The trial court made findings of fact substantially as follows:

That on or about October 30, 1904, defendant Albert Bird, being theretofore an unmarried man, intermarried with Clara Myers, mother of the plaintiff; that thereafter and in the years 1904–5, Clara Myers, then Clara Bird,

wife of the defendant Albert Bird, invested and advanced
from the funds of her separate estate the sum of $2,150 in
the construction of a dwelling-house upon the premises here
in litigation and then standing upon the public records in
the name of Albert Bird; that the funds so advanced and
invested by Clara Bird in the dwelling-house were so in-
vested and advanced pursuant to an understanding and
agreement between herself and husband that the real estate
thus improved by the dwelling-house, with the dwelling-
house thus constructed thereon, should be the separate prop-
erty and estate of Clara Bird during the period of her
natural life, and that upon her death the remainder in fee
in and to said property should become the property of the
plaintiff; that the defendant Albert Bird then and there
agreed, in consideration of said advancement and investment
of Clara Bird out of her separate estate, to do all acts and
things necessary to effectuate and carry out said understand-
ing and agreement, it being also understood and agreed by
and between defendant Albert Bird and Clara Bird and
the plaintiff herein that the defendant Albert Bird might
continue to occupy the premises as a home after the death
of Clara Bird and look after the same and protect the in-
terests and rights of the plaintiff in and to the property;
that on or about May 19, 1913, Clara Bird died, leaving
surviving her, her husband, the defendant Albert Bird, and
her daughter, the plaintiff herein; that thereafter the de-
fendant Albert Bird and the plaintiff herein continued to
occupy the premises as their home, until the year 1915,
when defendant Albert Bird intermarried with the defend-
ant Effie Bird; that ever since said marriage the defend-
ants have been and now are husband and wife; that the
defendant Albert Bird, from and after the construction of
the dwelling-house, recognized the rights and interest in
the premises of Clara Bird, his former wife, until the lat-
ter's death, and the rights and interest therein of the plain-
tiff, pursuant to said understanding and agreement, con-
tinuously, and at all such times admitted his obligations to
plaintiff to conserve the premises for her and to take the

proper steps necessary to vest the legal title in the plaintiff, until his repudiation of his obligations, as hereinafter set forth; that on or about February 15, 1921, defendant Albert Bird repudiated his trust and agreement as to said premises by executing a mortgage on the same, without plaintiff's knowledge or consent, and by entering into a written agreement with his present wife, purporting and attempting to convert the real property in question into the community property of himself and present wife; that these acts of repudiation on the part of the defendants, or either of them, were not communicated to plaintiff and did not come to her knowledge until about one year prior to the commencement of this action; that prior to the commencement of this action, the defendants ceased, and have ever since ceased, to occupy the said premises or any part thereof as a home or homestead; that the plaintiff is the owner of an undivided interest in and to the real estate to the extent and amount of $2,150 of the value thereof, and to that extent is entitled to the possession, rents, issues and profits thereof; that the residue of the interest and value of the real estate, if any, is the property of the defendants; and that the right and interest of the plaintiff therein to the extent of $2,150 of the value thereof is paramount to the rights of the defendants, or either of them.

As conclusions of law from the foregoing facts, the court found that the plaintiff was entitled to a decree quieting her title in and to the real estate to the extent of $2,150 of the value thereof, and of her right to the possession, rents, issues and profits of the same in proportion to her said interest; and that it be adjudged that all liens, mortgages and adverse claims against the premises by contracts or acts of the defendants, or either of them, at any time prior to the trial of the action, be so marshaled and paid that the burden thereof be first borne by that portion of the undivided interest in and to the real estate not quieted in plaintiff, before resort be had to the interest and rights of the plaintiff.

[1]   Defendants earnestly contend that the evidence does
not support the findings.  The findings are based upon a
conflict.  A careful perusal of the evidence, and an exami-
nation of authorities in the light of the record, satisfy us
that the evidence is sufficient to support the findings, and
that defendant Albert Bird held the property, to the extent
of the value found, in trust for the plaintiff.  (*Cooney v.
Glynn,* 157 Cal. 583, 108 Pac. 506; and cases cited *infra.*)

[2]   It is also insisted by defendants that, even conced-
ing that the evidence establishes a trust in plaintiff's favor,
her right of action is barred by the statute of limitations, by
reason of the alleged acts of repudiation of the trust on the
part of defendant Albert Bird, in that on or about February
15, 1921, he executed a mortgage on the premises, and pur-
ported and attempted by written agreement entered into
between himself and present wife to convert the premises
into community property; and that more than four years
elapsed from the date of said alleged repudiation until the
bringing of this action.  The court found, upon a conflict
in the evidence, that these alleged acts of repudiation were
not communicated to plaintiff and did not come to her
knowledge until about one year prior to the commencement
of this action.

[3]   The findings of the court support the conclusion
that a voluntary, continuing obligation, resting in parol,
arose in favor of the plaintiff by the understanding and
agreement of the parties.  In cases where such an obliga-
tion arises, and has been recognized under an oral or
parol agreement, the statute of limitations does not begin
to operate until the trustee begins to act in hostility to the
obligation imposed by the agreement, with knowledge of the
repudiation unequivocally brought home to the *cestui que
trust.*  (*Cooney v. Glynn, supra; Butler v. Hyland,* 89 Cal.
575, 26 Pac. 1108; *Arnold v. Loomis,* 170 Cal. 95, 148 Pac.
518; *Brison v. Brison,* 75 Cal. 525, 7 Am. St. 189, 17 Pac.
689; *Norton v. Bassett,* 154 Cal. 411, 129 Am. St. 162, 97
Pac. 894; *Taylor v. Morris,* 163 Cal. 717, 127 Pac. 66;

*Nasholds v. McDonell,* 6 Ida. 377, 55 Pac. 894.) As was said in *Odell v. Moss,* 130 Cal. 352, 358, 62 Pac. 555, 557:

"The case is not one of a merely constructive trust, but there was a trust 'voluntarily assumed, and which, by the understanding of the parties to it, was to be a continuing one. The trustee . . . . continued to hold according to the understanding, and never repudiated the relation,'—at least until after the judgment in the partition suit, within four years of the beginning of the action. (*Butler v. Hyland,* 89 Cal. 575, 581, 582, 26 Pac. 1108.) The trust was, indeed,—as was the case in *Butler v. Hyland,*—not evidenced by writing, and was, therefore, not enforceable as an express trust by legal proceedings; but it existed and was valid so long as it continued to be observed by the trustee, and established between her and the defendant the relation of trustee and *cestui que trust,* within the meaning of the rule that the statute does not run until the repudiation of the trust by the trustee. . . . . . But, to render a repudiation effectual to set the statute in motion, the knowledge of it must be brought home to the *cestui que trust.* (2 Perry, Trusts, sec. 864.)"

### (December 24, 1927.)

